504 So.2d 198 (1987)
Samuel C. JONES
v.
Clara HATCHETT.
No. 56284.
Supreme Court of Mississippi.
March 4, 1987.
*199 Jimmie B. Reynolds, Jr., Mildred M. Morris, Steen, Reynolds, Dalehite & Currie, Jackson, for appellant.
John S. Holmes, Holmes & Holmes, Herman B. DeCell, Henry, Barbour & DeCell, Yazoo City, for appellee.
*200 Before WALKER, C.J., and DAN M. LEE and GRIFFIN, JJ.
WALKER, C.J., for the Court:
Clara Hatchett filed suit against Samuel C. Jones in the Circuit Court of Yazoo County for injuries and property damage arising out of an automobile accident. The jury returned a verdict for Hatchett and awarded her $20,000.00. From a judgment entered pursuant to that verdict, Jones appeals, making seven (7) assignments of error.
At approximately 3:45 p.m. on July 26, 1982, Clara Hatchett was driving east on a gravel road toward Highway 49 near Yazoo City, Mississippi. After stopping where the gravel road intersected the Highway 49 frontage road, she drove her newly restored 1964 Comet onto the frontage road. According to Hatchett's testimony, her car died, blocking the southbound lane of the frontage road, and partially blocking the northbound lane. After attempting to start the car for approximately one minute, she saw a light blue Ford approaching in the southbound lane. At trial she estimated its speed to have been sixty (60) miles per hour. The Ford skidded for a distance, which Hatchett later measured to be one hundred and five (105) feet, and then struck Hatchett's car. She suffered bruises and a neck injury which subsequent tests revealed to be a fracture of the seventh cervical vertebra. Although the investigating officer offered to call an ambulance, Hatchett had her son drive her to a nearby physician's office. Jones, who was driving the Ford that struck Hatchett's car, claimed that she saw him approach, and that her car engine was running as he approached. He further testified that after the accident, he turned off the ignition in her car.
Neither Dr. Gilder, who treated Hatchett the day of the accident, nor Dr. Walwyn, her regular physician, took x-rays. Both physicians recommended massages and heat treatments. Because these measures afforded her little relief, Hatchett eventually went to another physician, Dr. Hogue, who diagnosed a fracture of the seventh cervical vertebra and suggested treatment similar to that recommended by the other two (2) physicians.
At the time of trial, Hatchett was suffering from what she described as "a lung disease;" her arm would sometimes go to sleep, and her head hurt. She testified that her injuries were aggravated by her employment, in which she was required to look up and down to count items in a stock room. She admitted, however, that she had only missed one day of work as a result of her injuries, and that she had received two (2) pay increases since the date of the accident.
A civil engineer called as a witness by Hatchett testified that the entire top of Hatchett's car could have been seen by a southbound driver at a point four hundred and thirty-four (434) feet from the point of impact. In addition, he testified that a car traveling at a speed of fifty (50) miles per hour (the applicable speed limit) should be able to stop in three hundred and twenty-seven (327) feet, allowing two and a half (2 1/2) seconds for reaction time. The engineer also testified that, at the point of impact, there was ample room to go around Hatchett's car on either side. Jones testified that he did not see Hatchett's car until he "topped the hill," which he claimed was approximately one hundred and fifteen (115) feet from her car; although he tried to stop, his brakes locked, and his vehicle slid into Hatchett's automobile.
After hearing the evidence, the jury returned a verdict for Hatchett and awarded her $20,000.00 in damages. From a judgment entered on that verdict, Jones appeals, assigning seven (7) errors.

I. DID THE TRIAL COURT ERR IN ALLOWING HATCHETT TO TESTIFY REGARDING HER TREATMENT BY DR. HOGUE?

III. DID THE TRIAL COURT ERR IN ALLOWING DR. HOGUE TO TESTIFY?

IV. DID THE TRIAL COURT ERR IN ALLOWING DR. HOGUE TO GIVE AN OPINION AS TO HATCHETT'S PERMANENT DISABILITY?
*201 Because these three (3) assignments all deal with Hatchett's failure to supplement responses to interrogatories, they will be considered together.
On December 13, 1983, Jones propounded interrogatories to Hatchett, asking, inter alia, what physicians she had seen; her complaints and symptoms presented to each physician; any disability given by a physician; and the treatment, if any, given by each physician. The response to this interrogatory did not mention Dr. Charles Hogue, whom Hatchett had not seen at the time the response was submitted to Jones. She was first treated by Dr. Hogue on April 19, 1984. On or about November 11, 1984,  four (4) days before trial  plaintiff Hatchett's counsel telephoned defendant Jones's counsel and stated that Hatchett had seen Dr. Hogue, and that Dr. Hogue would be called as a witness. Although Jones's attorney responded, "That's fine," he objected at trial when Hatchett attempted to testify about seeing Dr. Hogue, and objected again when Dr. Hogue was called to testify. Over these objections, Hatchett was allowed to testify about her treatment by Dr. Hogue, and Dr. Hogue himself was allowed to testify. Because the medical reports which were provided to defense counsel during discovery do not appear in the record, it is difficult to determine precisely what information about the neck injury was made available in response to Jones' interrogatories. The record does indicate, however, that Dr. Hogue was the only physician who diagnosed the neck injury as a fracture. Hatchett had not seen Dr. Hogue at the time the responses to interrogatories were submitted, so we may safely assume that no such diagnosis appeared in the medical records made available to defense counsel. On direct examination Dr. Hogue testified, apparently to defense counsel's complete surprise, that Hatchett had suffered a fractured cervical vertebra and had sustained "permanent damage." Thus, defense counsel's first knowledge of Hatchett's broken neck and "permanent damage" came at the same moment the jury learned of those facts through Dr. Hogue's testimony.
The very purpose of our civil discovery procedures is to prevent such trial by ambush. Henry L. Harris, v. General Host Corporation, 503 So.2d 795, 796 (Miss. 1986); Square D. Co. v. Edwards, 419 So.2d 1327, 1329 (Miss. 1982). Jones availed himself of our discovery procedures by propounding to Hatchett interrogatories which sought, inter alia, information about any disability given by any doctor and information about the identity and testimony of expert witnesses. Although Hatchett's attorney provided opposing counsel with Dr. Hogue's name four (4) days before trial, no information was given regarding his testimony. We note specifically that Hatchett's attorney never told opposing counsel that Dr. Hogue had diagnosed the neck injury as a fractured cervical vertebra.
Failure to supplement the two (2) interrogatories at issue here (expert witnesses and physician's diagnosis of disability) was the basis for our holding in Winston v. Cannon, 430 So.2d 413 (Miss. 1983). In Winston the defendant had propounded interrogatories almost identical to the two (2) involved in the case at bar. In that case, as in this one, the responding party failed to supplement the response to include later-acquired information about a physician's diagnosis of permanent disability. The trial court sustained an objection to that physician's testimony, and we upheld that ruling, based on the duty imposed under the statutory predecessor to Miss.R.Civ.P. 26(f). The rule states the following:
Supplementation of Responses. A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (a) the identity and location of persons having knowledge of discoverable matters, and (b) the identity of each person expected to be called as an expert witness at trial, the subject *202 matter on which he is expected to testify, and the substance of his testimony.
(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (a) he knows that the response was incorrect when made, or (b) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.
(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.
We next consider the effect of Hatchett's counsel's providing Dr. Hogue's name to opposing counsel four (4) days before trial. Although this course was preferable to providing no information, it simply was not sufficient to discharge the duty imposed by Rule 26(f). In Square D. Co. v. Edwards, 419 So.2d 1327, 1329 (Miss. 1982), we held that "a party must not only supplement interrogatories to reveal the identity of expert witnesses expected to be called at trial, but must also supplement interrogatories to reveal the substance of the testimony of such experts, if not stated in answers to the original interrogatories." Because Hatchett failed to supplement her responses, Dr. Hogue should not have been allowed to testify as an expert, nor should he have been allowed to state an opinion regarding any permanent disability.

II. DID THE LOWER COURT ERR IN ALLOWING THE MEDICAL REPORT OF DR. CYRIL A. WALWYN (DECEASED AT TIME OF TRIAL) TO BE INTRODUCED AND READ TO THE JURY?
The trial court, over Jones's objection, admitted into evidence and allowed to be read to the jury a letter which Dr. Cyril Walwyn, deceased at the time of trial, had written to Hatchett's attorney. In the letter, the physician described Hatchett's complaints and symptoms, as well as his diagnosis and treatment. Jones argues on appeal that this letter constituted inadmissible hearsay, and that the trial judge's ruling admitting it into evidence was thus reversible error.
The letter does not come under any of the well established exceptions to the hearsay rule which are enumerated in Rule 803 and Rule 804, Miss.R.Evid. (effective January 1, 1986). Although Hatchett argues on appeal that the letter was a business record, and thus admissible, it was obviously prepared in anticipation of litigation rather than in the course of a regularly conducted business activity, and thus it is not admissible under the business records exception. City of Bay St. Louis v. Johnston, 222 So.2d 841, 845 (Miss. 1969) (reliability of business record is based on presumption that person who has duty to keep record has no motive to suppress or distort truth). Because none of the established exceptions applied, the letter was admissible only if Hatchett could show 1) necessity for the evidence, and 2) adequate indicia of reliability. Seales v. State, 495 So.2d 475, 480 (Miss. 1986); City of Bay St. Louis v. Johnston, 222 So.2d 841, 844 (Miss. 1969); Rule 804(b)(5), Miss.R.Evid. (effective January 1, 1986) (requiring circumstantial guarantees of trustworthiness for "other exceptions"). That the letter was prepared by a physician is not, despite the medical profession's important role in our society, sufficiently indicative of reliability to warrant an exception to the hearsay rule. Georgia-Pacific Corp. v. McLaurin, 370 So.2d 1359, 1362 (Miss. 1979). Although deceased physician's reports have been held, under certain circumstances, to be admissible in worker's compensation cases, the holding has been limited to the area of worker's compensation. South Central Bell Telephone Company v. Aden, 474 So.2d 584, 592 and n. 4 (Miss. 1985); Hercules, Inc. v. Walters, 434 So.2d 723, 727 (Miss. 1983). Because the fact that a medical doctor wrote the letter was not sufficiently indicative of reliability to warrant an exception to the hearsay rule, there must be some other circumstantial guarantee of trustworthiness in order to justify an *203 exception. Hatchett argues on appeal that such a guarantee of trustworthiness was provided by Dr. Walwyn's widow, who testified, from her personal knowledge, regarding the document's contents. Such corroborating evidence is not what is meant by the phrase "circumstantial guarantees of trustworthiness." There must exist some circumstance in the making of the statement itself which would indicate its reliability. To illustrate, we note these examples. The present sense impression exception to the hearsay rule "is based on the theory that the contemporaneous occurrence of the event and the statement renders it unlikely that the declarant made a deliberate or conscious mispresentation." Comment to Rule 803(1), Miss.R.Evid. (effective January 1, 1986). The statement against interest exception to the hearsay rule is based on the recognition that "[n]o reasonable person would make such a statement ... if the statement were not true." Comment to Rule 804(b)(3), Miss.R. Evid. (effective January 1, 1986). Thus, the guarantee of trustworthiness must derive from the circumstances under which the statement was made.
We find no sufficient circumstantial guarantees of trustworthiness in the document in question. Indeed, it was written in anticipation of litigation and was precisely the type of unsworn, unconfronted testimony which the hearsay rule prohibits. The trial court erred in admitting the letter into evidence. Of course, any records which Dr. Walwyn prepared as a part of his regularly conducted business activity will be admissible on remand.

IV. DID THE TRIAL COURT ERR IN GRANTING PLAINTIFF'S INSTRUCTION NO. 2?
The instruction of which Jones complains on appeal allowed the jury to consider, in assessing damages, certain elements not supported by evidence. Specifically, the jury was allowed to consider, inter alia, 1) aggravation of pre-existing condition, if any, and 2) any future disability reasonably certain to occur. Although there was some testimony (though inadmissible under our holding today) to support the instruction on future disability, there was no substantial evidence to support the instruction on aggravation of pre-existing conditions. Injuries of any type or degree must be established by a preponderance of the credible evidence and shown to be causally related to the alleged negligence; unless a type of injury is thus established, no instruction based on that type of injury should be given. Mills v. Balius, 180 So.2d 914, 917 (Miss. 1965). Nevertheless, in a case where there was no evidence to support an instruction allowing damages for "substantial disfigurement resulting from physical injuries," we held that the error in giving the instruction was "not of such importance as to justify a reversal of the judgment." New Orleans & Northeastern R. Co. v. Thornton, 252 Miss. 49, 172 So.2d 560, 562-63 (1965). In the case at bar, the giving of this instruction, though error, does not require reversal. Other errors do. The trial judge, on remand, should give only those instructions which are warranted by the evidence.

V. DID THE TRIAL COURT ERR IN GRANTING PLAINTIFF'S INSTRUCTION NO. 3?
The instruction of which Jones complains read as follows:
The Court instructs the jury that if you believe from the evidence in this case that immediately prior to the collision between the vehicles driven by plaintiff and defendant that defendant was traveling at such a rate of speed that his automobile could not be stopped in time to avoid an object discernible within the range of his vision or in the assured clear distance ahead and as a direct and proximate result thereof the defendant drove his automobile into and against plaintiff's vehicle, then it is your sworn duty to find a verdict for the plaintiff.
In early cases, instructions similar to that complained of by Jones were approved by this Court, and were based on the concept that a driver who, because of darkness or inclement weather, was unable to see very far had a duty to drive at a speed *204 sufficiently slow to enable him to stop within that range of vision. Hardin v. Jackson Yacht Club, Inc., 232 So.2d 721 (Miss. 1970); Planters Wholesale Grocery v. Kincade, 210 Miss. 712, 50 So.2d 578 (1951); Jackson City Lines v. Harkins, 204 Miss. 707, 38 So.2d 102 (1948); Rhodes v. Fullilove, 161 Miss. 41, 134 So. 840 (1931). If a driver could not see more than two hundred (200) feet, he had to drive slowly enough that he could stop within two hundred (200) feet. Crossley v. James, 365 So.2d 957, 959 (Miss. 1978); Mills v. Bailus, 254 Miss. 353, 180 So.2d 914, 916 (1965); Bryan Brothers Packing Company v. Grubbs, 251 Miss. 52, 168 So.2d 289, 291 (1964). These instructions, however, should not be interpreted or applied to impose on a driver an absolute duty to avoid a collision. Such an interpretation would indicate that a driver had a duty to avoid a vehicle which suddenly darted out into his path ten (10) feet in front of him. The law makes no such requirement. In Crossley v. James, 365 So.2d 957 (Miss. 1978), we held that the trial court erred in instructing the jury that a driver must "at all times drive [his] automobile at such a rate of speed as to enable [him] to avoid striking other vehicles which come within [his] vision and under [his] observation... ." Crossley, 365 So.2d at 959 (emphasis in original). We stated, "The instructions place upon appellant a greater burden than the law imposes, viz, the burden of avoiding the collision. Rather, the question is whether or not plaintiff's driver was guilty of negligence... ." Id. The instruction in the case at bar was erroneously granted.

VI. DID THE TRIAL COURT ERR IN GRANTING PLAINTIFF'S INSTRUCTION NO. 5?
Plaintiff's Instruction No. 5 required the jury to find for Hatchett if they found 1) that Jones had failed to keep a reasonably safe and proper lookout, and 2) that such failure was a proximate contributing cause of the accident. Jones argues on appeal that the instruction was not supported by evidence and therefore should have been refused. As noted in the discussion of the facts, there was evidence that Jones should have seen Hatchett's automobile when he was four hundred and thirty-four (434) feet away, and that, given two and a half (2 1/2) seconds for reaction time, he should have been able to stop his vehicle within three hundred and twenty-seven (327) feet. Reasonable inferences flowing from the evidence are to be considered in determining the propriety of a requested instruction. Hill v. Dunaway, 487 So.2d 807, 809 (Miss. 1986). The evidence and reasonable inferences therefrom were sufficient, in the instant case, to present a jury question as to whether Jones was keeping a proper lookout.

VII. DID THE LOWER COURT ERR IN REFUSING TO GRANT DEFENDANT'S INSTRUCTION NO. 11 AND DEFENDANT'S INSTRUCTION NO. 12?
The two (2) proffered instructions, which were refused by the trial court, were to the effect that 1) if Hatchett's vehicle was blocking both lanes when Jones first saw it, and if Jones acted reasonably in attempting to avoid the accident, then he was not liable, and 2) if Jones was operating his vehicle in a careful manner at a safe speed when Hatchett's vehicle "first came into his view," and if Jones acted reasonably in attempting to avoid the accident, that he was not liable.
The effect of these two (2) instructions was to excuse Jones from any liability as long as he acted reasonably once he saw Hatchett's vehicle; they ignored the duty which the law imposed on Jones to keep a proper lookout. Barkley v. Miller Transporters, Inc., 450 So.2d 416 (Miss. 1984); Tippit v. Hunter, 205 So.2d 267 (Miss. 1967). The assignment of error is without merit.

WAS HATCHETT ENTITLED TO A DIRECTED VERDICT ON THE ISSUE OF LIABILITY?
Although Hatchett has not cross-appealed, she argues throughout her brief *205 that a directed verdict should have been granted in her favor on the issue of liability, and that any "technical errors" in jury instructions were therefore harmless. This assignment is, for at least two (2) reasons, without merit. First, Hatchett has not cross-appealed, so the issue is not properly before the Court. McGaugh v. Gray, 495 So.2d 1024, 1025 (Miss. 1986). Second, Jones's testimony, that he could not and did not see the car until he was one hundred and fifteen (115) feet from it, was sufficient to render a directed verdict on liability inappropriate. Hatchett actually made a request for a peremptory instruction, rather than a motion for a directed verdict. The peremptory instruction, like the demurrer to the evidence, has been superseded in modern procedure by the motion for directed verdict. Comment to Rule 50, Miss.R. Civ.P. When Hatchett asked the trial court for a peremptory instruction (directed verdict), the trial court was required to consider all of the evidence and reasonable inferences flowing therefrom in the light most favorable to Jones, and to disregard all evidence in conflict with that favorable to Jones. White v. Hancock Bank, 477 So.2d 265 (Miss. 1985). Because the evidence, particularly Jones's testimony, was sufficient, when examined under this familiar standard, to support a verdict for Jones, the trial court properly denied Hatchett's request.

CONCLUSION
The judgment of the trial court is reversed because of error in 1) allowing Dr. Hogue's expert testimony, 2) admitting Dr. Walwyn's letter, which was hearsay, and 3) instructing the jury that Jones had a duty to drive in such a manner that he could avoid an object within the range of his vision. On remand, responses to interrogatories may be supplemented, non-hearsay records of Dr. Walwyn may be introduced, and the trial court should give only those instructions which are supported by the evidence.
REVERSED AND REMANDED.
ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.