750 So.2d 546 (1999)
Lonnie A. FORD, III, Appellant,
v.
Mollie B. JOHNSON, Appellee.
No. 97-CA-00604-COA.
Court of Appeals of Mississippi.
September 28, 1999.
Walter C. Morrison, IV, Jackson, Attorney for Appellant.
John S. Holmes, Yazoo City, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., DIAZ, AND MOORE, JJ.
*547 MOORE, J., for the Court:
¶ 1. Appellee Mollie B. Johnson initiated this personal injury action in the Circuit Court of Yazoo County, alleging that she sustained injuries in a car accident resulting from Appellant Lonnie Ford's negligence. Pursuant to a peremptory instruction from the court as to liability, the jury awarded Johnson damages in the amount of $35,000.
¶ 2. Ford appeals, asserting that the trial court abused its discretion by allowing Johnson's doctor to testify that Johnson suffered permanent injury. Finding no merit to this claim, we affirm.

FACTS
¶ 3. On May 1, 1995, Johnson was driving her 1984 Chrysler New Yorker in Yazoo City. As she prepared to turn left into Stricks Convenience Store, Johnson stopped to wait for oncoming vehicles to pass. Ford, driving his white van, hit Johnson's car from behind. Although Johnson stated immediately after the accident that she did not need to go to the hospital, soreness developed in her neck and upper back over the next few days.
¶ 4. Two days after the accident, Johnson sought medical treatment from her regular doctor, Dr. William P. Thompson, who diagnosed a thoracic cervical sprain and prescribed medication. The next day, Johnson had an X-ray performed at King's Daughter's Hospital, but received no medical opinion as to her condition. Johnson subsequently sought treatment from Dr. Charles R. Hogue, who viewed X-rays, diagnosed a thoracic cervical sprain, and prescribed heat therapy. Johnson remained on the medication prescribed by Dr. Thompson and received seven heat therapy treatments between May 9 and May 25, 1995. She did not see Dr. Hogue again for the subject injuries until August 12, 1996, three days before trial.

TRIAL
¶ 5. During opening statements, plaintiff's counsel predicted that Dr. Hogue would testify that the Johnson had sustained permanent injury as a result of the collision.
¶ 6. Mollie Johnson and her husband, Clarence Johnson, testified about the incident, detailed her medical treatment and injuries, and described the progression of her injury and the ensuing back pain, neck pain, headaches, and sleeplessness. Officer David Lloyd recalled the scene of the accident and testified that Johnson complained of pain, advised him that she did not need an ambulance, and said she "would probably go to the hospital to get checked out."
¶ 7. During the trial and prior to Dr. Hogue's testimony, the defense objected to any testimony from Dr. Hogue as to the permanency of the Johnson's injuries, asserting that his opinion of permanent injury had not been disclosed to the defense prior to trial. The court overruled the objection, and Dr. Hogue testified that X-rays showed no injury to the bones in Johnson's neck and back, but he also noted that Johnson exhibited limited motion of the neck when she initially sought treatment from him. He established that all of Johnson's symptoms were compatible with the diagnosis of severe cervical and upper back sprain. When asked on direct examination whether Johnson's condition had become static, Dr. Hogue offered the following response:
Well, based on the nature of her injury, based on the symptoms and what signs that she exhibited afterwards and also based on my experience in dealing with this type of injury, I would say that she does have and most likely will have, continue to have problems with this. She may be at a plateau ofas your word is, "static" at the present time, but certainly there is a good probability that she has permanent damage as a result of this.
¶ 8. Dr. Hogue described the anatomy of the neck and how it can be damaged. After he thoroughly explained this physical *548 structure, the defense objected, averring that Dr. Hogue's testimony about the neck structure went far beyond the information disclosed in discovery. The objection was overruled, and Dr. Hogue interpreted an X-ray illustrating the anatomy of an average neck and head. When the X-ray was offered into evidence, the defense renewed its objection, and the court overruled it. As Dr. Hogue discussed how easily the neck is subjected to injury, he differentiated Johnson's case from common neck pain on the basis that Johnson's pain persisted instead of subsiding within a week.
¶ 9. After the plaintiff rested, Ford's request for directed verdict was denied. Over Ford's objection, the court allowed Johnson to reopen her case, admitting the medical bills into evidence. Without presenting any witnesses, the defense rested, and the court considered jury instructions offered by both parties, including a peremptory instruction to find Ford liable for negligence. Following closing statements and deliberation, the jury returned a unanimous verdict requiring Ford to pay $35,000 in damages.

ANALYSIS
¶ 10. Ford contends that Dr. Hogue's testimony as to the permanency of Johnson's injury should have been excluded because Johnson failed to answer interrogatories completely and to seasonably supplement responses as required by Mississippi Rule of Civil Procedure 26(f)[1]. Ford claims that the admission of the testimony constitutes an abuse of discretion by the circuit court and that it resulted in an "ambush" at trial. The applicable standard of review provides that evidentiary rulings rest within the trial judge's broad discretion and will not be reversed on appeal absent an abuse of that discretion. Sumrall v. Mississippi Power Co., 693 So.2d 359, 365 (Miss.1997). Furthermore, the issue of whether to prohibit the introduction of certain evidence as a sanction for violating discovery rules rests within the sound discretion of the trial court. M & M Pipe and Pressure Vessel Fabricators, Inc. v. Roberts, 531 So.2d 615, 620 (Miss.1988).
¶ 11. Pursuant to Ford's objection on the grounds of inadequate supplementation, the parties discussed the interrogatories, responses, and documentation. Without specifically addressing the question of whether the discovery documents disclosed the allegation of permanent injury, the court established that the plaintiff did not have any more information or reports from Dr. Hogue than the defense had been given. Finding that Johnson did not improperly fail to supplement her discovery responses, the court overruled Ford's objection as to that issue.
¶ 12. On appeal, Ford again contends that Johnson subjected him to "trial by ambush" by refraining from indicating that Dr. Hogue would testify about permanent injury. Thus, we examine the interrogatories in question. Ford filed his first set of interrogatories and requests for production of documents on October 3, 1995, and Johnson filed her responses on March 8, 1996. For the purpose of this appeal, only Interrogatories No. 8, No. 22, and No. 23 are relevant.

INTERROGATORY NO. 8: Identify each and every expert who has been consulted or retained relative to the *549 cause of action as alleged and identify the subject matter upon which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. Also identify each and every expert retained or specially employed by you in anticipation of litigation or preparation for trial and who is not expected to be called as a witness in this matter.

ANSWER: None, other than the treating physicians, Dr. William P. Thompson and Dr. Charles R. Hogue.

INTERROGATORY NO. 22: Please list each and every fact that supports the allegations of paragraph 4 of your complaint relative to your alleged injuries and damages. Please list all witnesses, including expert witnesses, that will testify in support of these allegations and produce all medical records and reports relative to this allegation.

ANSWER: Medical Bills and records already submitted to the defendant support the allegations in paragraph 4 of my complaint. Along with my own testimony, I may call ... Dr. Charles R. Hogue ... to testify in support of said allegations.

INTERROGATORY NO. 23: Do you contend that you have been permanently injured as a result of this accident? If the answer is "yes", please list the names, addresses and telephone numbers of all witnesses who will confirm this allegation and identify all documents that will confirm this allegation.

ANSWER: Yes. Of course, I cannot say exactly what any witness would say with reference to my being permanently injured, but I do say that the witnesses named in the answer to Interrogatory No. 22 would all contribute testimony toward establishing my contention of permanent disability....
¶ 13. In her answer to Interrogatory No. 23, Johnson also included the names, addresses, and telephone numbers of the witnesses mentioned in her answer to No. 22.
¶ 14. Interrogatory No. 22 refers to paragraph 4 of Johnson's complaint, which we quote:
4. As a direct and proximate result of the negligence of the Defendant, Plaintiff was seriously and permanently injured about the head, neck, body and extremities and sustained among other injuries, spraining, straining type injuries to her neck and mid-back with damage to the muscles, nerves, ligaments, tendons, vertebrae, and discs thereof. As a direct and proximate result of her injuries, Plaintiff was forced to secure medical attention and has incurred doctor's bills and medical expenses as follows:

King's Daughters Hospital $ 272
Physicians & Surgeons Clinic 880
Yazoo City Medical Clinic, P.A. 40
 ______
 $1,192

Plaintiff has suffered and will continue to suffer in the future severe physical pain and mental anguish and will incur future medical expense in at least the sum of $3,000, and has received severe, crippling and disabling injuries, all to her damage in the sum of $75,000.
¶ 15. Along with her responses, Johnson produced a report from Dr. Hogue, dated June 12, 1995, including his opinions that Johnson's condition indicated a severe neck sprain and a strain of the mid-back. The report reflects that Dr. Hogue had last seen Johnson on May 25, 1995, and that she exhibited some improvement, but was still suffering neck and back pain. Dr. Hogue's report concluded that Johnson would require treatment in the future and would probably continue to suffer pain and partial disability for a period of ten to twelve months.
¶ 16. On August 13, 1996, two days before trial, Johnson served supplemental responses, which included the following statement:
Plaintiff's witness, Dr. Charles R. Hogue, will utilize an X-ray picture of an average head and neck to make clear to *550 the jury the injuries suffered by the Plaintiff. Dr. Charles R. Hogue has seen and examined Plaintiff on August 12, 1996 and will testify to his findings as of that date.
Pursuant to a subpoena, Ford had already obtained a copy of Dr. Hogue's notes and records of Johnson's treatment, including the August 12, 1996, examination. Consequently, Ford had all of Dr. Hogue's reports relating to Johnson's diagnosis and treatment.
¶ 17. Ford notes that Johnson's counsel obviously knew that Dr. Hogue would testify regarding a permanent injury because he mentioned the probable testimony in opening statements. Ford also observes that Dr. Hogue's first report indicated that Johnson would "probably continue to suffer pain and partial disability for a period of 10 to 12 months." In deference to this conjecture, Ford argues that Dr. Hogue's opinion that Johnson suffered a permanent injury should have been disclosed through supplementation of discovery. However, we recognize that Dr. Hogue's initial report was merely a qualified prediction of the probable progression of Johnson's recovery. It is a projection rather than a conclusive opinion, and the report does not indicate that Johnson would experience one-hundred percent recovery within any given time. The discovery responses, filed nine months later, indicated that Dr. Hogue would testify regarding permanent injury.
¶ 18. In his brief, Ford insists, "It is an undeniable fact that prior to trial Johnson had failed to disclose to Ford that Dr. Hogue would testify that she was permanently disabled." On the contrary, our review of the discovery documents reveals that the substance of Dr. Hogue's testimony was disclosed. Ford was plainly advised that Johnson was seeking damages for permanent injury and that Dr. Hogue would be presented to attest permanent injury. Johnson's discovery responses prevented the type of "trial by ambush" to which Ford alleges he was subjected, thereby serving the purpose of civil discovery procedures and seasonable supplementation. See Blanton v. Bd. of Sup'rs of Copiah County, 720 So.2d 190 (¶ 34) (Miss. 1998); Jones v. Hatchett, 504 So.2d 198, 201 (Miss.1987).
¶ 19. First, Johnson alleged in paragraph 4 of her complaint that she was "seriously and permanently injured" as a result of Ford's negligence. The complaint also alleged that Johnson's injuries were disabling and that she "has suffered and will continue to suffer in the future severe physical pain and mental anguish and will incur future medical expense." (emphasis added). These averments afforded notice to Ford that Johnson sought damages for permanent injuries.
¶ 20. Next, in responding to Interrogatory No. 22, Johnson referred to the medical bills and treatment records acknowledging "each and every fact that supports the allegations of paragraph 4 of [Johnson's] complaint relative to [her] alleged injuries and damages" as required, and she advised that Dr. Hogue, among other witnesses, would testify "in support of these allegations." Accordingly, Johnson provided notice that Dr. Hogue would testify in support of the allegation that she was "permanently injured."[2]
¶ 21. Finally, Johnson's response to Interrogatory No. 23 defies any doubt that Ford had notice that Dr. Hogue would support Johnson's assertions of permanent injury. No. 23 explicitly asks, "Do you contend that you have been permanently injured as a result of this accident?" Johnson's answer manifests her unequivocal response, "Yes." Moreover, the answer *551 refers to all witnesses named in the answer to Interrogatory No. 22, which included Dr. Hogue; names those witnesses, including Dr. Hogue; provides the address and telephone number of each witness as requested; and states that the witnesses listed "would all contribute testimony toward establishing [Johnson's] contention of permanent disability."
¶ 22. In support of his argument on appeal, Ford cites cases in which witness testimony was ruled inadmissible due to the proponents failure to seasonably disclose the subject witness's name or proposed testimony. In distinguishing these cases from the case at hand, we hold firmly to the precept that the procedural rules are "designed to assure to the maximum extent practicable that cases are decided on their merits, not the fact that one party calls a surprise witness and catches the other with his pants down." Broadhead v. Bonita Lakes Mall, Ltd. Partnership, 702 So.2d 92 (¶ 36) (Miss.1997) (citing Harris v. General Host Corporation, 503 So.2d 795, 796 (Miss.1986)).
¶ 23. Specifically, Ford cites Varner v. Patrick, 523 So.2d 319, 321 (Miss.1988), in which the supreme court found no abuse of discretion when the trial court excluded an appraiser's testimony because his name and his appraisal were not disclosed until one day before the trial. In contrast, Dr. Hogue's name and his expected testimony were disclosed five months prior to the trial of the case at hand, allowing Ford ample opportunity to question Dr. Hogue and to present witnesses to rebut Dr. Hogue's opinion.
¶ 24. In Square D Co. v. Edwards, 419 So.2d 1327, 1329 (Miss.1982), the proponent disclosed the expert's name and supplemented interrogatories about expected testimony by simply referring to the expert's deposition; however, the testimony which was ultimately excluded on remand was not included in the deposition testimony. Thus, the expert's testimony at trial had never been disclosed and did constitute unfair surprise. As we have established, Dr. Hogue's testimony at trial was not a surprise because it was disclosed in the interrogatory responses.
¶ 25. Ford also refers to T.K. Stanley, Inc. v. Cason, 614 So.2d 942, 950-51 (Miss. 1992), in which the supreme court stated that the trial court erred in allowing a witness to testify about disability even though the interrogatories indicated that he would testify about causation. The proponent in Winston v. Cannon, 430 So.2d 413, 415 (Miss.1983), another case to which Ford refers, submitted a witness's medical report which affirmatively stated that the plaintiff would have no permanent injury and then elicited testimony from the witness that the plaintiff was permanently injured. The present case varies in its facts from Cason and Winston in that Johnson's interrogatory responses, which were filed after Dr. Hogue's initial report, plainly indicated that Dr. Hogue would testify to support Johnson's allegations of permanent injury, and Dr. Hogue did, in fact, testify that Johnson was permanently injured.
¶ 26. In Simmons v. Bank of Mississippi, 593 So.2d 40, 43 (Miss.1992), the proponent did not disclose the witness's name in discovery, but tried to call the witness in rebuttal. The supreme court found that the chancellor committed no error in sustaining an objection and precluding the witness's testimony. Id. Similarly, in Harris v. General Host Corp., 503 So.2d 795, 797 (Miss.1986), the proponent only disclosed the witness's name during the trial when attempting to call the witness in rebuttal. The supreme court determined that the trial court erred by admitting the testimony over objection and reversed and remanded the case. Id. In Jones v. Hatchett, 504 So.2d 198, 202 (Miss.1987), the witness's name was disclosed only four days before trial, and the proponent provided no information to the opposing party about the witness's expected testimony. As we have gleaned from the interrogatories and responses, Dr. Hogue's name and expected testimony were disclosed to the *552 defense at least five months prior to trial. Therefore, the Simmons, Jones, and Harris cases differ in their facts to such an extent that they are not relevant to our review.

CONCLUSION
¶ 27. The record reveals that Ford's assignment of error is unfounded. Johnson disclosed Dr. Hogue's name and expected testimony in her response to Ford's interrogatories. Furthermore, the cases Ford cites to support his argument are distinguishable on their facts and lend no validity to his claim.
¶ 28. Finding no merit to Ford's assertion and no abuse of discretion by the trial judge, we affirm the circuit court's ruling and the subsequent verdict.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED TO APPELLEE. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] The relevant excerpt from M.R.C.P. 26(f) reads as follows:

(f) Supplementation of Responses. A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons (i) having knowledge of discoverable matters, or (ii) who may be called as witnesses at the trial, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
. . . .
M.R.C.P. 26(f) (1991).
[2] Dr. Hogue's initial report was dated June 2, 1995, while the pertinent interrogatory responses were provided as of March 8, 1996. Johnson did not return to Dr. Hogue for examination or treatment during that interval, but the interrogatory responses submit that Johnson suffered continuing pain and disability, an actuality that Dr. Hogue acknowledged in his trial testimony.