816 So.2d 398 (2001)
Debra Lomax CASSIBRY, Appellant,
v.
Brian SCHLAUTMAN, Appellee.
No. 2000-CA-01466-COA.
Court of Appeals of Mississippi.
October 30, 2001.
Rehearing Denied February 5, 2002.
Certiorari Denied May 16, 2002.
*399 Joseph E. Roberts, Jr., Jackson, Attorney for Appellant.
Vick K. Smith, Attorney for Appellee.
Before McMILLIN, C.J., BRIDGES, and CHANDLER, JJ.
CHANDLER, J., for the Court:
¶ 1. Debra Cassibry appeals from the jury verdict and resulting judgment awarding her $500 for damages sustained in an automobile accident involving herself and the appellee, Brian Schlautman. Cassibry moved the circuit court for additur or alternatively a new trial, arguing that the judgment failed to compensate her for her medical expenses. Aggrieved by the circuit court's refusal to grant an additur or new trial, Cassibry cites the following issues on appeal:
I. WHETHER THE TRIAL COURT ERRED BY REFUSING TO GRANT AN ADDITUR WHEN THE JURY VERDICT FAILED TO COMPENSATE FOR MEDICAL EXPENSES; AND
II. WHETHER THE TRIAL COURT ERRED IN ALLOWING CERTAIN HEARSAY MEDICAL RECORDS INTO EVIDENCE.

STATEMENT OF THE FACTS
¶ 2. On April 2, 1996, Debra Cassibry and Brian Schlautman were involved in an automobile accident wherein Schlautman negligently struck Cassibry's vehicle from behind. Schlautman conceded the issue of negligence, and the case proceeded to trial on the issue of damages. Schlautman testified that the collision had been insubstantial, causing very little visible damage to either vehicle. Furthermore, Schlautman stated that he spoke with Cassibry immediately after the accident, asking her if she *400 was injured; Cassibry acknowledged that she was fine.
¶ 3. Cassibry testified that the impact of the two cars caused "a big jolt," resulting in immediate neck pain. She stated that the pain would not go away and eventually became so unbearable that by April 9, 1996, one week after the initial accident, she went to see a doctor. Cassibry's medical records show that she visited the family doctor on four different occasions between April and August 1998. Each time the doctors prescribed her pain medication. Cassibry acknowledged that x-rays taken at that time failed to reveal any signs of physical damage to either her neck or back.
¶ 4. On August 18, 1996, Cassibry was injured in another automobile accident. For the second time in two and one-half months, the negligence of another driver resulted in Cassibry's vehicle being struck from behind. However, this time the negligent vehicle was proceeding approximately fifty miles per hour when the collision occurred. The mere impact of the two vehicles tossed Cassibry into the dashboard, causing, among other things, a smashed knee and a broken thumb. Despite the severity of this accident, Cassibry insisted that the accident did not cause or aggravate any injuries to her neck or back.
¶ 5. Following the second accident Cassibry visited Dr. Harless, her family physician, who in turn referred her to Dr. Parks, an orthopaedic surgeon. For reasons which are unclear, Cassibry did not see Dr. Parks until March 27, 1997, approximately seven months after the second accident. During this time Cassibry worked as a notary in New Orleans. She testified that the pain in her neck became increasingly more intense.
¶ 6. After listening to Cassibry, Dr. Parks came to the conclusion that Cassibry's neck and back injuries had been caused by the second accident. However, Cassibry requested that Dr. Parks change the medical records on May 19, 1998, to state that the injuries were caused by the first accident. Dr. Parks complied with Cassibry's request but, contrary to her wishes, noted that if the second accident had not caused the neck and back injuries, it certainly played a role in aggravating them.
¶ 7. Dr. Parks concluded that Cassibry had a pinched nerve in her back and suggested surgery. Cassibry, increasingly apprehensive at the thought of surgery, sought the solace of a chiropractor instead. Dr. Beatty, the chiropractor, determined that the curve in Cassibry's neck had reversed and performed a procedure to straighten it out. Cassibry testified that while this procedure helped her neck, the pain in her back increased.
¶ 8. After numerous visits to various doctors, Cassibry was referred to Dr. Voorhies, a neurosurgeon. Dr. Voorhies, like Dr. Parks, suggested surgery but Cassibry refused. Finally, in December 1999, over three and one-half years after the first accident, Cassibry underwent surgery for the injuries to her back. However, by that time Cassibry had been in a third automobile accident where, just like the previous two, a second vehicle rear-ended her vehicle. Cassibry admitted that the third accident caused significant injury to her lower back.

LAW AND ANALYSIS

I. DID THE TRIAL COURT ERR BY REFUSING TO GRANT AN ADDITUR WHEN THE JURY VERDICT FAILED TO COMPENSATE FOR MEDICAL EXPENSES?
¶ 9. Cassibry argues that she is entitled to an additur, contending that the jury verdict must have been the result of bias, *401 passion, and prejudice inasmuch as it did not compensate her for the medical bills incurred as a result of Schlautman's negligence. In determining whether Cassibry should be awarded an additur, this Court must first look to Miss.Code Ann. § 11-1-55 (Rev.1991), which provides:
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for a new trial or affirm on direct or cross appeal, upon the condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence.
¶ 10. This Court will not reverse a trial court's denial of a motion for additur unless it is clear that the trial court abused its discretion. Boggs v. Hawks, 772 So.2d 1082, 1084(¶ 5) (Miss.Ct.App. 2000). The burden of proving injuries and other damages is on the party requesting the additur. Maddox v. Muirhead, 738 So.2d 742, 743 (¶ 5) (Miss.1999). Moreover, evidence will be viewed in a light most favorable to the nonmoving party, including any favorable inference that may be reasonably drawn from such evidence. Id. The Mississippi Supreme Court has always been reluctant to set aside jury verdicts, noting that a verdict should not be adjusted "unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 945 (Miss.1992). See also Gibbs v. Banks, 527 So.2d 658, 659 (Miss.1988)(noting that additur should not be employed indiscriminately as it is a judicial intrusion into functions traditionally relegated to the jury). Finally, there are no fixed standards for judging which cases are entitled to an additur; therefore, each case must be decided in the context of its own facts. Leach v. Leach, 597 So.2d 1295, 1297 (Miss.1992).
¶ 11. Under Miss.Code Ann. § 41-9-119 (Rev.1993), "[p]roof that medical, hospital, and other doctors bills were paid or incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable." See Boggs, 772 So.2d at 1085(¶ 9); Hubbard v. Canterbury, 805 So.2d 545 (¶ 10)(Miss.Ct.App.2000). However, the defendant can rebut such damages by putting forward proper evidence tending to negate the necessity and reasonableness of the expenses. Jackson v. Brumfield, 458 So.2d 736, 737 (Miss.1984). See also Moody v. RPM Pizza, Inc., 659 So.2d 877, 886 (Miss.1995).
¶ 12. Cassibry contends that Schlautman failed to rebut the necessity and reasonableness of the medical bills she entered into evidence and, therefore, the jury should have compensated her for the full amount of the expenses. However, the main issue in this case does not pertain to the necessity and reasonableness of Cassibry's medical expenses; rather, it revolves around whether her injuries and resulting medical expenses were caused by Schlautman's negligence. As the Mississippi Supreme Court has noted, "recoverable damages must be reasonably certain in respect to the efficient cause from which they proceed, and that the burden is on the claimant to show by a preponderance of the evidence that the person charged was the wrongful author of that cause." Blizzard v. Fitzsimmons, 193 Miss. 484, 10 So.2d 343, 345 (1942). See also Brake v. Speed, 605 So.2d 28, 32 (Miss.1992); Jackson v. Swinney, 244 Miss. 117, 124, 140 So.2d *402 555, 557(1962)(rejecting conjecture as a basis for liability).
¶ 13. In Brake, the plaintiff was involved in two separate automobile accidents during a six-month period. Brake, 605 So.2d at 29. The plaintiff sued the individual who caused the first accident and the jury awarded her less than half of her total medical expenses; the trial court then rejected her request for an additur. Id. at 29-30. The Mississippi Supreme Court affirmed, holding that the verdict "was not so shocking or unsupportable in evidence to lead one to think that the verdict was a result of prejudice ... it was incumbent upon [the plaintiff] to prove by a preponderance of the evidence that her injuries were attributable to the accident with [the defendant]." Id. at 34. In reaching its decision, the court emphasized the differences in the two accidents, noting that the plaintiff drove away after the first accident but was taken to the hospital by an ambulance following the second accident. Id. at 35. Likewise, the court noted that the medical treatment increased after the second accident as the plaintiff required diagnostic tests, chiropractic treatment, and numerous doctor visits. Id.
¶ 14. Turning to the case at bar, we find that the jury's verdict is not without support. First, the accident occurred at a low rate of speed and the damage to each vehicle was visibly insignificant. Likewise, immediately following the collision Cassibry told Schlautman that she was fine. Further, Cassibry did not see a doctor until a full week after the accident. Moreover, Cassibry visited the doctor's office only four times prior to the second accident, never receiving anything more than pain medication. At one point a doctor ordered Cassibry to attend physical therapy sessions but she ignored his advice. Finally, by her own admission, none of the x-rays taken prior to the second accident revealed any kind of injury to her neck or back.
¶ 15. In contrast, the damage caused by the second accident was more apparent. Cassibry testified that the driver responsible for that accident had been going approximately fifty miles per hour just prior to the collision. Cassibry stated that the impact from the second accident tossed her into the dashboard, causing multiple injuries including a broken thumb and a smashed knee. Cassibry denied that this accident had any detrimental effect on her neck or back injuries. However, according to Dr. Parks, the second accident aggravated Cassibry's preexisting neck and back injuries.
¶ 16. We also find significant the fact that Cassibry's back and neck injuries deteriorated after the second and third accidents. In support of this conclusion we take notice of Cassibry's growing reliance on medical specialists and medication. The medical bills presented by Cassibry showed that only $905.47 of the $65,977.98 in damages could be traced to medical treatment prior to the second accident. Moreover, at least $52,000 of the damages claimed were for medical services incurred after May 22, 1998, the date of the third accident. Cassibry even admitted that the third accident aggravated the injuries to her back, noting "the third accident caused the L5 S1 disk to slip, cutting the nerve that went down the right leg." Viewing this evidence in a light most favorable to Schlautman, this Court finds that Cassibry failed to prove that all of her alleged injuries were caused by Schlautman; therefore, we affirm the trial court's denial of the additur.

II. DID THE TRIAL COURT ERR IN ALLOWING CERTAIN HEARSAY MEDICAL RECORDS INTO EVIDENCE?
*403 ¶ 17. Cassibry argues that Dr. Parks's medical records should have been excluded from evidence because their introduction denied her the opportunity to cross examine Dr. Parks on the content of the records. Furthermore, Cassibry contends that even if the medical records had been admissible, Schlautman failed to properly authenticate them. This Court grants a high degree of deference to the trial court's decision to suppress or admit evidence and will not find error absent a clear abuse of discretion resulting in prejudice. Bower v. Bower, 758 So.2d 405(¶ 40) (Miss.2000). We hold that the medical records fell within M.R.E. 803(6) and were properly authenticated; therefore, the trial court did not abuse its discretion when it admitted the records.
¶ 18. Mississippi law defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E 801(c). However, M.R.E. 803 provides that certain types of statements will not be excluded regardless of whether the declarant is available to testify. Quimby v. State, 604 So.2d 741, 746 (Miss.1992). Under Rule 803(6):
[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or self-authenticated pursuant to rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
M.R.E. 803(6). The Mississippi Supreme Court has addressed the issue of whether medical records fall under the 803(6) exception. See Jones v. Hatchett, 504 So.2d 198, 202 (Miss.1987). In Jones, the court rejected the appellant's argument that a doctor's memorandum written to an attorney fell under the protections of M.R.E. 803(6). Id. at 203. The court emphasized that the letter "was obviously prepared in anticipation of litigation rather than in the course of regularly conducted business activity, and thus it is not admissible under the business records exception." Id. at 202. However, the court concluded that any other medical records that the doctor "prepared as part of his regularly conducted business activity [would] be admissible on remand." Id. at 203.
¶ 19. In the case at hand, there is no evidence to suggest that Dr. Parks prepared Cassibry's medical records in anticipation of litigation. Cassibry testified that the records were for the benefit of her insurance company and Dr. Parks. Unlike the Jones case, Cassibry neither proved nor even argued that the records were prepared for her attorneys. Therefore, the medical records were admissible as business records kept in the regular course of business.
¶ 20. Cassibry next argues that the medical records, even if admissible, should have been kept out because they were not properly authenticated. Under M.R.E. 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." One method of authentication *404 is to have a knowledgeable witness testify that the matter is what it is held out to be. M.R.E. 901(b). Here, Cassibry, a knowledgeable witness, testified that the documents she handed over to Schlautman during discovery were her medical records.
¶ 21. Recently, the Mississippi Supreme Court rejected a husband's claim that he should be able to authenticate his wife's America Online internet records. Bower, 758 So.2d at 414(¶ 41). The court, relying on Rule 901, rejected the husband's attempt, stating that he "was not involved in the preparation of the internet documents, he did not work directly for [America Online], nor could he testify to the accuracy of the documents." Bower, 758 So.2d at 415(¶ 45). Therefore, the court concluded that the documents were inadmissable for lack of proper authentication. Id.
¶ 22. The facts in this case differ from the facts in Bower. Nonetheless, emphasizing the same elements used to reject the plaintiff's argument in Bower, we find that Cassibry is a proper source of authentication for her own medical records, provided by her during discovery, and used against her during cross-examination. Cassibry had a detailed, first hand knowledge of the records, even possessing them at one time, and could testify to their accuracy. In fact, Cassibry admitted at trial that the records were precisely what Schlautman purported them to be, the medical assessments compiled by Dr. Parks. As if this admission was not enough, the record makes it clear that Cassibry had a great deal of control over what information made it into the records. On one occasion, after reaching a settlement agreement with the driver who caused the second accident, Cassibry, during a visit with Dr. Parks, asked him to change her records in order to state that her neck and back injuries were caused solely by Schlautman.
¶ 23. Therefore, unlike the plaintiff in Bower, Cassibry was present at the time Dr. Parks made each record and determined the information that went into the medical records; she was clearly involved in the preparation of the documents. Furthermore, she could and did testify to the accuracy of the records, stating that Dr. Parks must have been confused when he compiled the records. Finally, it is immaterial that Cassibry did not work as the custodian of Dr. Parks's medical records as it is clear that Cassibry's involvement in creating and changing the reports is sufficient to support a finding that the documents in question are the medical records compiled by Dr. Parks. Given this evidence, we fail to find anything in the record that would indicate that the medical records compiled by Dr. Parks lacked trustworthiness.
¶ 24. Nevertheless, even if the records had not been properly authenticated, we find that their admission does not rise to the level of reversible error. According to the Mississippi Supreme Court, "[w]here corroborative evidence exists and hearsay evidence is merely cumulative, the admission may be held to be harmless." Young v. State, 679 So.2d 198, 203 (Miss. 1996). See also Sanders v. State, 757 So.2d 1022, 1025(¶ 5) (Miss.Ct.App.2000); Harrison v. State, 724 So.2d 978, 983(¶ 11) (Miss.Ct.App.1998); Jones v. State, 606 So.2d 1051,1057 (Miss.1992).
¶ 25. In the case at bar, Schlautman introduced the reports to show that his negligence was not the cause of Cassibry's injuries. However, even without the reports, a reasonable juror could have come to the same conclusion. As noted, immediately following the accident, Cassibry told Schlautman that she was fine. This statement is consistent with the inoffensive nature of the accident, including Schlautman's low speed at the time of *405 impact and the insignificant amount of visible damage to either vehicle. Furthermore, Cassibry did not go to a doctor until a full week after the accident and never received anything more than pain medication prior to the second accident. In contrast, Cassibry admitted that the individual responsible for the second accident was going approximately fifty miles per hour when his vehicle rear-ended hers. The forceful impact of the second accident hurled Cassibry into the dashboard, causing serious injuries. Likewise, Cassibry's visits for medical treatment and dependance on medication increased after the second accident. Instead of the family doctor at an after hours clinic, Cassibry now frequented the offices of chiropractors, orthopaedists, and neurosurgeons. Given this exhaustive list of corroborative evidence, the admission of Dr. Parks's medical records was harmless, at best.

CONCLUSION
¶ 26. When the facts are presented in a light most favorable to Schlautman, we find that the jury's verdict is full of evidentiary support. Cassibry's argument that she is entitled to damages in amount equal to her medical bills is without merit because she could not prove that Schlautman's negligence caused the injuries represented in the medical bills. Therefore, the trial court did not err in refusing to grant an additur. Furthermore, the medical records compiled by Dr. Parks fell under the Rule 803(6) business record exception to the hearsay rule and Cassibry, given her role in making and changing the records, was qualified to authenticate the documents. However, even assuming the records were inadmissible, the court's admission was harmless given the extensive amount of corroborative evidence and testimony in support of the conclusion that most of Cassibry's injuries could not have been caused by Schlautman.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, AND MYERS, JJ., CONCUR. BRANTLEY, J., NOT PARTICIPATING.