513 So.2d 587 (1987)
Lemmie A. STRATTON & Campbell 66 Express, Inc.
v.
Rachel WEBB.
No. 57154.
Supreme Court of Mississippi.
September 30, 1987.
*588 Katherine Ferguson Kirby, Gholson, Hicks & Nichols, Columbus, for appellant.
Jeffrey C. Smith, Sims & Sims, Columbus, for appellee.
Before HAWKINS, P.J., and ANDERSON and GRIFFIN, JJ.
ANDERSON, Justice, for the Court:
This is an appeal from the Circuit Court of Lowndes County wherein appellee Rachel Webb was awarded $245,000 damages for injuries resulting from an automobile accident. The trial court ordered a remittitur of $100,000 or in the alternative a new trial. Appellee agreed to the remittitur, but appellant brought this appeal alleging error in the trial below.
Appellee in response cross appealed alleging error in the order of remittitur.
Rachel Webb was involved in a motor vehicle accident on November 1, 1978, on Highway 82 in Columbus, MS. Her pickup truck was struck from the rear after she stopped in the left lane of traffic in order to allow the car in front of her to make a left turn. Just after stopping, she felt an impact that caused her head to hit the windshield. She remembered nothing else other than feeling the impact and then immediate, severe pain in the lower back and leg area.
The empty six-wheel tractor truck which struck Webb belonged to Campbell 66 Express, Inc. and was driven by Lemmie Stratton in the course and scope of his employment.
As a result of the accident, Webb was hospitalized for seven days. She was treated by Dr. J.H. Holleman, given a myelogram, and diagnosed as having a severe sprain of her back and neck.
When Webb's pain persisted, Dr. Holleman referred her to Dr. Wiley Hutchins, an orthopedic surgeon. He diagnosed Webb as having early hypertrophic arthritis of the lumbar spine with superimposed strain  his primary diagnosis being strain or sprain of the lumbar spine.
Again, Webb's pain persisted and Hutchins then referred her to Dr. Thomas McDonald, a neurosurgeon. After examination, myelogram and x-rays, his diagnosis was sprain with an expectancy for full and complete recovery with no permanent disability.
In September 1979, Webb went to Dr. John G. Gassaway, an orthopedic surgeon who continued to be her treating physician *589 at the time of trial. His preliminary diagnosis, after the first examination was a chronic lumbosacral (lower back) strain. He noted her pain had not been alleviated by prior treatment and in January 1980 suggested the possible need for surgery. Webb at that time rejected the surgery, opting to continue working.
On August 22, 1980, Gassaway noted that Webb demonstrated evidence of a ruptured L-5 at S-1 disc. [This was prior to a December 3, 1980, accident which appellants claim to be a superceding cause of injury.] He also stated that to a reasonable medical certainty Webb had significant injury or disease prior to the December 3 accident and her complaints had been consistent throughout this time.
Dr. Gassaway subsequently performed surgery on Webb in May 1982 (hemilaminectomy at L-4, 5 in the lower spine). Webb's relief as a result of the surgery was short-lived. The pain returned after several weeks and Gassaway stated that to a reasonable medical certainty Webb had no significant recovery from the initial injury. He also testified that Webb, who was 38 years old at the time of the accident, had probably a 15-25% disability rate (as determined in worker's compensation cases).
Webb had suffered several injuries after the November 1 accident and prior to trial. She was kicked in the head by a pony around November 19, 1979. She claimed this did not result in any serious injury to her head and did not affect her back at all.
On December 3, 1980, while working as a security guard, Webb was injured in a moped accident. The only evidence introduced was that Webb was riding a moped but does not remember how the accident occurred, and there were no witnesses. She suffered a concussion and shoulder injury and was hospitalized for a period of time, remaining comatose for eleven days. Worker's Compensation records introduced by appellant show that Webb received 8.5% disability payment for chronic cervical strain as a result of that accident.
The truck driven by Webb belonged to her husband's employer, Ranchers and Farmers Livestock of Macon, MS. Appellants claim that the only damage to Webb's truck was a damaged bumper which cost $153 to repair. However, the bumper was a heavy-duty one used for work such as towing cattle trailers. Webb's husband testified that other damage was done to the vehicle which the owners chose not to repair. According to Marvin Webb, the bed of the truck was jammed against the cab and the truck was shaken loose. According to Stratton slight damage was caused to the left front fender of the Campbell 66 truck. Webb's medical expenses, including the 1982 surgery totalled $8,200.

I.
Appellants first argue that the testimony of Dr. Gassaway, Webb's only expert witness relative to her medical condition, was insufficient to sustain the verdict. Gassaway, who began treating Webb some ten months after the accident, testified that he could not positively state the cause of plaintiff's medical condition. Therefore, appellants' claim that Webb's injury was not traced with reasonable certainty to any wrong of the appellant.
Both parties cite a case wherein the facts and alleged errors were remarkably similar to the case at bar. In Dennis v. Prisock, 254 Miss. 574, 181 So.2d 125 (1965), after remand 221 So.2d 706 (Miss. 1969), the plaintiff allegedly sustained back injuries as a result of an automobile accident. As in the case sub judice, plaintiff had several subsequent serious accidents prior to trial which defendants claimed to be the cause of the injury in question. This Court reversed on the grounds that the plaintiff "failed to trace the injuries to her back with requisite certainty to an efficient cause to which defendants are responsible." The facts underlying this holding are as follows:
Dr. Dyer, plaintiff's witness, was the only doctor who testified. Over objection, he stated as his opinion that Mrs. Prisock sustained the disc injury to her back in the collision involving appellant's truck on July 6, 1959. Yet he had no knowledge of plaintiff's fall down a flight of stairs on March 19, 1959, and *590 the surrounding facts. He did not know she fell in the summer of 1960, of the automobile collision of September 10, 1960, and of a fall on April 24, 1961, or of the injuries resulting from them. She told him about the September 1, 1959, accident, but he did not treat her for it, although he prescribed some sedatives over a period of time. His reason for concluding that the July 6, 1959, collision caused the ruptured disc was "that the first time I saw this patient with a back injury was at that time." He thought he was thus justified in presuming that was her original injury. However, he did not know that she was wearing a back brace after March 19, 1959, and it would change his opinion considerably if the brace was for a back injury. The first time he x-rayed Mrs. Prisock's lower back was in February 1962.
181 So.2d at 127.
However, on appeal again after remand, the Court accepted evidence explaining the difference between the injuries shown to have occurred in other accidents, and the one at issue. The Court this time held the jury had all the information before it and was the judge of the weight and worth of the evidence. A judgment for the plaintiff was affirmed.
The case sub judice is distinguished from the first Dennis in that testimony regarding the effect of the subsequent injuries was presented to the jury. Dr. Gassaway was properly qualified to testify as an expert witness. His testimony was that there was reasonable medical certainty that Webb had significant back problems prior to the second accident of December 3. He also felt the injury was related to the November 1 accident. A medical expert need not testify with absolute certainty. Pittman v. Hodges, 462 So.2d 330, 335 (Miss. 1984). Jesco, Inc. v. Shannon, 451 So.2d 694, 700 (Miss. 1984). His testimony, taken as a whole, sufficiently established a reasonable medical certainty that the accident caused the injuries.
It is unrefuted in this case that Webb began suffering back problems immediately after and as a result of the collision and that her problem was consistent from November 1, 1978, until the time of trial. Further, all of the doctors, except Dr. Holleman, conceded that the myelogram, the diagnostic tool for detecting ruptured discs was not 100% accurate.
As in Dennis, after remand, the jury had the facts before it and was properly the judge of its weight and worth.
Appellants allege the testimony of Webb as to her medical condition was incompetent as a matter of law. Dennis v. Prisock, 221 So.2d 706 (Miss. 1969), effectively addressed this issue:
Any witness is competent to testify who has evidentiary facts within his personal knowledge, gained through any of his senses. A nonprofessional witness may describe personal injuries. Physical pain, weakness, exhaustion and the like are matters one may testify about. [citations omitted].
* * * * * *
We are of the opinion that Mrs. Prisock could testify that she had pain in her back as a result of the collision, that this back condition prevented her from performing her normal activities, and that the pain lasted until she was relieved by an operation. She could testify that her back hurt after an accident, and that there was no additional hurt as a result of a later accident. See Marley Construction Co. v. Westbrook, 234 Miss. 710, 107 So.2d 104 (1958).
221 So.2d at 710, 711.
A review of the record in this case discloses that Webb testified that her vehicle was hit from the rear, causing her head to hit the window. She immediately began to experience severe back and leg pain which has persisted to the date of the trial. She suffered no additional injury to her legs and back as a result of subsequent accidents and has been unable to perform her duties as a wife and homemaker since the initial accident. This testimony was clearly admissible.
Appellant alleges that expenses incurred after the December 3 accident *591 should not have been admitted because of the absence of causal connection to the November 1 accident. Mrs. Webb testified that the expenses were incurred as a result of continuing treatment for injuries sustained on November 1.
In Jackson v. Brumfield, 458 So.2d 736, 737 (Miss. 1984), this Court stated:
When a party takes the witness stand and exhibits bills for examination by the court and testifies that said bills were incurred as a result of the injuries complained of, they become prima facie evidence that the bills so paid or incurred were necessary and reasonable. However, the opposing party may, if desired, rebut the necessity and reasonableness of the bills by proper evidence. The ultimate question is then for the jury to determine.
In view of Jackson, Webb's testimony was sufficient basis for admissibility of bills.
Appellants allege that Exhibit 23 was inadmissible because it was not properly a bill and because it indicated the existence of insurance.
First, although the document is itself an insurance form, all references to insurance have been deleted. Secondly, MCA § 41-9-119 (1972), requires only "proof that the bills were incurred or paid" to sustain its admission. The documents submitted gave general descriptions of the services necessitating the fees. Under the circumstances, we are satisfied that the documents provided sufficient proof of expenses incurred and were properly admitted.
The court ordered a $100,000 remittitur with the following comments:
... the Court having considered the motion for Judgment Notwithstanding Verdict, or in the alternative, for a New Trial and the Court being of the opinion and hereby finding that the verdict of the jury evidenced by bias, prejudice and sympathy of the jury and that the verdict is excessive. Amount the facts that the Court considers pertinent in reaching this conclusion was that the plaintiff worked approximately four years after the involved accident, the damage to her vehicle was approximately $148, and all the medical totalled approximately $8,200.
It is apparent that the trial judge gave consideration to the total circumstances, including the aggravating effect of the subsequent injuries in this case.
Each case must be decided on its own particular facts. Considering all of the evience in this case, this Court is of the opinion that the trial court acted properly in granting the remittitur. We therefore find that both the jury verdict and the order of remittitur were proper.
AFFIRMED ON DIRECT APPEAL. AFFIRMED ON CROSS APPEAL.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and GRIFFIN, JJ., concur.