771 So.2d 403 (2000)
Richard C. CADE and Wal-Mart Stores, Inc., Appellants,
v.
Linda Faye WALKER, Appellee.
No. 1999-CA-01984-COA.
Court of Appeals of Mississippi.
November 14, 2000.
*405 John S. Hill, Attorney for Appellants.
W. Howard Gunn, Attorney for Appellee.
BEFORE McMILLIN, C.J., LEE, AND PAYNE, JJ.
LEE, J., for the Court:
¶ 1. This appeal is from the judgment of the Circuit Court of Monroe County which ordered the appellants and defendants below, Raymond C. Cade and Wal-Mart Stores, Inc., to pay $29,099 plus all assessed court costs to Linda Faye Walker, appellee and plaintiff below, for damages incurred in a car accident. The appellant asserts three issues on appeal, all of which we will encompass in one: that the trial court erred in failing to grant a remittitur of the judgment or, in the alternative, denying the defendant's motion for a new trial on the issue of damages because the amount of the judgment was excessive and contrary to the overwhelming weight of the evidence. After a thorough review of the record, we find no reversible error and affirm.

FACTS
¶ 2. According to the appellee, Linda Faye Walker, she was in a vehicular accident on February 1, 1993 when her red 1988 Grand Am was struck on the driver's door by a Wal-Mart truck driven by Raymond C. Cade. In the car with Walker were her two children, two nieces, a nephew, and Walker's sister. The accident occurred around 6:30 in the evening as Walker was stopped in the exit lane of the Wal-Mart parking lot which intersects with Highway 45. While she was waiting for traffic to clear so that she could make a right turn into the southbound lane of the highway, Walker said a Wal-Mart truck entered the middle exit lane for traffic desiring to enter the northbound lane of Highway 45. She said that the driver of the truck attempted to turn south, or make a right turn onto the highway, when the truck struck the driver's door of her car while she was at a complete stop. She said her foot was on the brake but the impact knocked it to the accelerator. The impact dragged Walker's car onto a concrete curb adjacent to the exit, and Walker was propelled from the driver's side of the car and was knocked into the gearshift, which was on the floorboard, toward the passenger's seat. She testified that she was not knocked completely into the passenger's seat where her six year old son was sitting. Though there were six other people in the car with Walker, she was the only person injured in the accident. The pictures admitted into evidence showed that the car door on the driver's side was severely dented all the way to the edge but that the damage was confined to the door.
¶ 3. After Walker was hit, the truck continued down the highway. A family acquaintance happened to witness the accident from the parking lot and came to Walker's aid. He took the children with him while Walker and her sister went to a convenience store across the street to call Wal-Mart. The manager of Wal-Mart told Walker that the truck was on its way to the Best Western. Walker also called the police. Officer Johnny Buster of the Aberdeen Police Department testified that he went to the Best Western where he found Cade in his Wal-Mart uniform eating in the dining room. Cade was not aware that he had hit anyone. Officer Buster inspected the truck in the parking lot and said that he saw no damage, scuff, or gouge marks on the rear trailer or the wheels. Buster said he looked along the whole edge of the trailer, around the wheel wells, and towards the rear of the trailer, and on the rubber on the side of the *406 rubber wheels and the rims, and that he saw no paint transfers.
¶ 4. Walker said she did not feel any pain immediately after the accident. She said that one or two weeks after the accident she felt a nagging pain in her neck and lower back for which she took Tylenol and aspirin. Walker testified that she did not miss any time from her work as a seamstress after the accident. She saw a physician, Dr. Coughlin, on March 10, 1993, more than seven weeks after the accident. Dr. Coughlin took x-rays of her neck. He told her to take Tylenol for the pain and that if the pain continued to come back and see him. Walker said the pain continued. Instead of returning to Dr. Coughlin, she saw Dr. John McFadden on April 2, 1993, taking with her payment of $75 made by Walker's attorney for services to be rendered. Dr. McFadden took an x-ray, which was normal. He said her complaints of pain were consistent with a diagnosis of lumbar sprain or lumbar disk injury and prescribed an anti-inflammatory medication. Walker saw Dr. McFadden again on April 23, 1993, when he released her from his care because she was responding well to treatment. The record does not show that she has since been treated.
¶ 5. Walker claims that as a result of the accident that she suffered emotional trauma and mental distress which continued to exist at the time of trial. She said that she is nervous every time she sees a big transport truck and when an eighteen-wheeler passes her. She also testified that she still had back pain off and on at the time of trial and that she still had problems bending and lifting heavy objects. In addition, she said she continued to perform her job in pain. As a result of the accident, Walker claims she incurred medical bills of $569, property damage for $550, as well as past, present, and future pain and suffering and mental anguish. She asked for and was awarded $29,099 in total damages.
¶ 6. At trial, Cade and Wal-Mart denied that the accident happened. During closing argument defense counsel claimed that the accident could not have happened the way Walker described, damaging the door on the driver's side of the car without having affected the mirror on that side. The defense, however, offered no expert witness regarding accident reconstruction.

ISSUE AND DISCUSSION

DID THE TRIAL COURT ERR IN FAILING TO GRANT A REMITTITUR OF THE JUDGMENT OR, IN THE ALTERNATIVE, DENYING THE DEFENDANT'S MOTION FOR A NEW TRIAL ON THE ISSUE OF DAMAGES BECAUSE THE AMOUNT OF THE JUDGMENT WAS EXCESSIVE AND CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?

STANDARD OF REVIEW
¶ 7. Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found. Bell v. City of Bay St. Louis, 467 So.2d 657, 660 (Miss.1985). The jury's verdict in a civil case is a finding of fact. Edwards v. Ellis, 478 So.2d 282, 289 (Miss.1985). Even if we think the amount awarded in the verdict is liberal, we are not allowed to supplant our judgment for that of the jury unless we conclude that there was insufficient evidence to support the award of damages or that the verdict was the product of bias, passion, or prejudice. South Cent. Bell Tel. Co., Inc. v. Parker, 491 So.2d 212, 217 (Miss.1986).
¶ 8. The analysis begins with the basic rule that Walker, as the injured party, has the burden of going forward with sufficient evidence to prove her damages by a preponderance of the evidence. TXG Intrastate Pipeline Co. v. Grossnickle, 716 *407 So.2d 991, 1016 (Miss.1997); Boling v. A-1 Detective & Patrol Serv., Inc., 659 So.2d 586, 590 (Miss.1995). In determining whether or not Walker met her burden in establishing her damages involving her present, past, and future pain and suffering, mental anguish and past medical expenses, we are required to view the evidence in a light most favorable to the jury's verdict, giving her the benefit of all favorable inferences that may reasonably be drawn. Odom v. Roberts, 606 So.2d 114, 118 (Miss.1992).
¶ 9. In Houston v. Page, 208 So.2d 901, 905 (Miss.1968), the court stated that though the amount of damages is primarily a concern for the jury, Miss. Code Ann. § 11-1-55 (Rev. 1991) gives the trial judge, being in a superior position to determine whether the jury has responded to reason with reference to damages, the authority to see that the award is reasonably within the bounds of the evidence. Should the trial court determine that a verdict is, upon the evidence, either grossly excessive or inadequate, the court has the authority to set it aside and award a new trial. Where a new trial is granted upon ground that a verdict is excessive, the trial court may suggest a remittitur as an alternative to the new trial. Id. The motion for an additur and its mirror motion, one for a remittitur, are variants of the motion for a new trial, going solely to the issue of damages. Odom, 606 So.2d at 119.
¶ 10. A trial court's authority to order an remittitur is found in Miss.Code Ann. § 11-1-55 (Rev. 1991), which reads as follows:
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.
Miss.Code Ann. § 11-1-55 (Rev. 1991). Pursuant to this statute, an additur or remittitur can be awarded by the court finding that either: (1) the jury or trier of fact was influenced by bias, prejudice, or passion, or (2) the damages awarded were contrary to the overwhelming weight of credible evidence. Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 944 (Miss. 1992); Leach v. Leach, 597 So.2d 1295, 1297 (Miss.1992); Biloxi Elec. Co., Inc. v. Thorn, 264 So.2d 404, 405 (Miss.1972).
¶ 11. The Mississippi Supreme Court discussed these two standards in Odom and stated that they essentially are one and the same. The overwhelming weight of credible evidence standard is objective and applied by reference to the law on recoverable damages when applied to the evidence in the case. Such matters are reviewed on appeal for abuse of discretion. The bias, prejudice or passion standard is purely a circumstantial standard since we obviously have no way of knowing what was in the jury's mind. Odom, 606 So.2d at 119-20 n. 5. When this Court reviews the action of the jury after the trial court has refused to grant a new trial on the question of damages, the question then becomes whether the verdict was either so excessive or inadequate as to shock the conscience and to indicate bias, passion and prejudice on the part of the jury, or, whether the jury failed to respond to reason. Dorris v. Carr, 330 So.2d 872, 874 (Miss.1976). Evidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any, to be drawn *408 from contrasting the amount of the verdict with the amount of the damages. Rodgers, 611 So.2d at 944-45; Pham v. Welter, 542 So.2d 884, 888 (Miss.1989); Matkins v. Lee, 491 So.2d 866, 868 (Miss.1986); City of Jackson v. Ainsworth, 462 So.2d 325, 328 (Miss.1984); Biloxi Elec. Co., Inc., 264 So.2d at 405. The Mississippi Supreme Court has stated that while pain and suffering is, to a large degree, not susceptible to monetary quantification, the jury necessarily has especially broad leeway. It, nevertheless, recognized that the sky is not the limit. Illinois Cent. R. Co. v. Gandy, 750 So.2d 527, 534 (Miss.1999).

COMPARISON OF AWARDS
¶ 12. We thus review a claim of excessiveness, as required by precedent, by comparing the awards at issue with rulings in other factually similar cases decided under controlling law. The jury's award will be disturbed only if it is entirely disproportionate to the injury sustained. Id. We have studied several decisions in order to compare approved jury verdicts with the verdict in the case sub judice. This is difficult to do since no two cases are exactly alike. Walker claims she incurred medical bills of $569, as well as past, present, and future pain and suffering and mental anguish. She was awarded $29,099 in total damages, or 51 times her medical expenses. Though the cases are numerous, we have narrowed our focus, for the most part, to recent cases which we believe are representative of others and have considered cases where mental anguish was a component.
¶ 13. The appellant relies on Rawson v. Midsouth Rail Corp., 738 So.2d 280 (Miss. Ct.App.1999), where a railroad employee, Rawson, injured his back when he tripped on a piece of pulpwood lying between two tracks in a poorly lighted area one night while he was on the job. He received emergency room treatment for his injury the day after the accident. Id. at 283 (¶ 4). X-rays revealed no fractures and, though Rawson was not hospitalized, he saw a doctor approximately six times over a three month period and was prescribed medication for pain and heat therapy with instructions to restrain from work, lifting and bending. After three months he was released to work with no restrictions and Rawson said he was pain free at that time. Id. at 285 (¶ 13). However, he said that when he returned to work he had to change the manner in which he performed his job and that he could no longer perform certain tasks without pain. He also testified that he could no longer carry firewood into his house as well as participate in other activities. Id. at 285-86 (¶ 15). One doctor told him he would have to live with his back problem. Id. at 285 (¶ 14). Rawson claimed $12,300 in lost wages and testified to having missed eighty days from work over a three year period because of back pain. All of his medical bills were paid by his employer's insurance. The jury returned a verdict awarding $187,500 and the trial court granted a motion for a remittitur for $112,500, which reduced the amount of the verdict to $75,000. Id. at 284 (¶ 10). This Court affirmed the remittitur, stating that the verdict was against the overwhelming weight of the evidence and was so excessive as to evince bias, prejudice and passion on the part of the jury against Rawson's employer. Id. at 285 (¶ 11). The amount of the verdict reduced by the remittitur was approximately six times Rawson's lost wages, whereas the jury had awarded more than 15 times Rawson's lost wages.
¶ 14. Walker, the appellee, relies almost exclusively on General Motors Corp. v. Pegues, 738 So.2d 746 (Miss.Ct.App.1998), because the jury returned a large judgment which was 18.5 times the medical expenses and this Court refused a remittitur. In that case, Pegues was speeding and driving while drunk when he had an accident that he argued was caused when a defective ball joint on his pickup truck broke and caused him to loose control of his vehicle and crash. Id. at 748 (¶ 1). He *409 incurred serious injuries requiring fourteen surgeries, including a leg amputation, colostomy, and skin graft. His medical expenses were $190,424.16 and additional surgery was necessary for internal injuries. Id. at 756 (¶ 27). Once he was released from the hospital he was all but bedridden for almost a whole year. Id. at 757 (¶ 29). We will not go into detail regarding his injuries, it will suffice to say that Pegues's whole life had changed as a result of the accident. Id. at 757 (¶ 30). He had suffered loss of earnings and earning capacity. The jury returned a verdict in his favor for $3,529,600, and General Motors filed JNOV or, in the alternative, a new trial, or remittitur, all of which the trial court denied. Id. at 748 (¶ 1). General Motors appealed, arguing that the award was excessive and one of the largest in Mississippi's history. Id. at 754 (¶ 24). This Court affirmed the jury's verdict and ensuing judgment and did not grant a remittitur. Id. at 757-58 (¶ 32).
¶ 15. McNeil v. Bourn, 721 So.2d 663, 669-70 (Miss.Ct.App.1998), involved a truck driver who admitted liability against injured motorist whose pre-existing back injury was aggravated in the accident. Bourn was hospitalized for two weeks following the accident. Id. at 665 (¶ 3). Bourn testified that he suffered mental anguish after the accident because he could no longer function in his business or at home as he had prior to the accident. Id. at 670 (¶ 26). This Court affirmed the trial court in finding that the judgment rendered of $121,000 was not so excessive so as to indicate bias and prejudice. Id. at 664 (¶ 1). This judgment was 5.4 times the submitted medical bills of $22,337.11. Id. at 670 (¶ 24).
¶ 16. In Ford v. Johnson, 750 So.2d 546, 549 (¶ 14) (Miss.Ct.App.1999), the driver of an automobile was rear-ended and seriously and permanently injured about the head, neck, body and extremities, sustaining injuries to her neck and mid-back with damage to the muscles, nerves, ligaments, tendons, vertebrae, and discs thereof. As a direct and proximate result of her injuries, she sought medical attention and incurred doctor's bills and medical expenses of $1,192. She claimed that she had suffered and would continue to suffer in the future severe physical pain and mental anguish and would incur future medical expense of at least $3,000. Id. Johnson asked for $75,000 in damages. Id. She was awarded $35,000, or 8.3 times the medical expenses. Id. at 547(¶ 1). Though the issue in this appeal was not in regard to the amount of the judgment, we find it worthy of review because of its timeliness and other similarities to the case at bar.
¶ 17. Woods v. Nichols, 416 So.2d 659 (Miss.1982), is cited by the appellee with regard to remittitur. In Woods, a UPS driver suffered permanent injuries, including an amputated leg, as well as physical and mental pain, in an accident and incurred almost $26,000 in medical expenses and $27,000 in lost wages. Id. at 670. He was hospitalized for 48 days and missed 60 weeks of work. Id. The Mississippi Supreme Court found that an award of $550,000, or 10.4 times the damages, was not so excessive as to evince passion, bias and prejudice on the part of the jury. Id. at 671.
¶ 18. The trial court in Stratton v. Webb, 513 So.2d 587, 588 (Miss.1987), ordered a remittitur, which was affirmed on appeal, for $100,000 where the jury awarded $245,000 for injuries sustained in a rear end collision. The total medical expenses were $8,200. Id. at 589. The plaintiff was hospitalized for seven days and was diagnosed with a severe sprain of the lumbar spine. Id. at 588. The jury award reduced by the amount of the remittitur was 17.7 times the medical expenses.

CONCLUSION
¶ 19. These cases have been reviewed by contrasting the amount of the verdict with the amount of the damages in cases where the jury verdict was approved in an effort to establish a guideline from which to infer *410 evidence of corruption, passion, prejudice or bias on the part of the jury, as required by precedent. Rodgers, 611 So.2d at 944-45; Pham, 542 So.2d at 888; Matkins, 491 So.2d at 868; City of Jackson, 462 So.2d at 328; Biloxi Electric Co., Inc., 264 So.2d at 405. The greatest multiple, 18.5, of the amount of damages to the verdict is found in General Motors Corp. v. Pegues, and the lowest was in McNeil v. Bourn, 5.4.
¶ 20. In the case sub judice, though Walker's injury was minimal compared to the injuries incurred in the cases discussed above, she was awarded $29,099 in total damages, or 51 times her medical expenses. Though this is almost three times the greatest multiple found in the cases we have reviewed, the amount of damages is primarily a concern for the jury. Houston v. Page, 208 So.2d at 905. The Mississippi Supreme Court has recognized that though the sky is not the limit with regard to jury verdicts, the jury necessarily has especially broad leeway. Illinois Cent. R. Co., 750 So.2d 527, 534 (Miss.2000). We therefore defer to the jury and affirm the verdict and judgment of the trial court.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. SOUTHWICK, P.J., CONCURS IN RESULT ONLY.