**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2013-CA-01263-COA**

CHRISTY A. HARPER                                                           APPELLANT

v.

NORMAN EDWARDS                                                             APPELLEE

DATE OF JUDGMENT:                    05/17/2013
TRIAL JUDGE:                         HON. JAMES MCCLURE III
COURT FROM WHICH APPEALED:           PANOLA COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:             HAL SCOT SPRAGINS JR.
                                     DAWN DAVIS CARSON
                                     RUSSELL BARTON JORDAN
ATTORNEY FOR APPELLEE:               THOMAS ALAN WOMBLE
NATURE OF THE CASE:                  CIVIL - PERSONAL INJURY
TRIAL COURT DISPOSITION:             $25,000 JURY VERDICT IN FAVOR OF
                                     APPELLEE
DISPOSITION:                         AFFIRMED: 11/18/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., MAXWELL AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Norman Edwards was driving on a two-lane county road when he rounded a curve and

encountered Christy Harper's vehicle parked on the wrong side of the road at her mailbox.

Edwards was unable to avoid a collision because, at that moment, another vehicle was

approaching in the correct lane. He brought suit against Harper to recover for injuries and

property damage suffered in the accident. The jury found that Edwards had suffered $25,000

in damages, for which Harper was ninety-five percent at fault. Harper appeals, and we

affirm.

DISCUSSION

**1. Opening Prayer**

¶2.     Harper's first issue on appeal centers around the prayer prior to opening court for the day, or, more precisely, who gave it. At 8 a.m. the morning of the trial, the circuit clerk learned that the minister who had originally been scheduled to lead the prayer would not be able to attend. "Out of desperation," the clerk asked Rubert Morgan, a local minister, to substitute. He had given the opening prayer in the past. Immediately after the prayer, Edwards's attorney introduced Morgan to Harper's attorney and informed her that Morgan worked as an investigator for his law firm. Morgan was in court that day to assist Edwards's attorney with jury selection.

¶3.     During voir dire, one of the veniremen recognized Morgan as an employee of a law firm that had represented her many years before. Harper's attorney, apparently trying to figure out which firm, told the venireman – in front of the entire panel – that Morgan worked for opposing counsel's law firm.

¶4.     After finishing her voir dire, Harper moved for a mistrial. She did not take issue with the content of the prayer or how it was delivered, but she argued that allowing Morgan to lead it amounted to an endorsement of Edwards's counsel. The trial court refused to grant a mistrial, but it ordered Morgan not to assist Edwards's counsel inside the courtroom. It was noted on the record that Morgan was never seen by the venire sitting at the counsel table or otherwise conferring with Edwards's attorney. The venireman who had been represented by Morgan's employer was struck for cause. On appeal, Harper argues that the failure to grant

a mistrial was reversible error.

¶5.     A mistrial should be granted when one party suffers "substantial and irreparable prejudice." URCCC 3.12. The trial judge, who had a firsthand view of the events as they unfolded, is in the best position to determine whether prejudice has occurred and to what extent it can be cured. *Coho Resources Inc. v. McCarthy*, 829 So. 2d 1, 18 (¶50) (Miss. 2002). Thus we review the grant or denial of a motion for mistrial for an abuse of discretion. *Estate of Gibson v. Magnolia Healthcare Inc.*, 91 So. 3d 616, 629 (¶37) (Miss. 2012).

¶6.     The prayer occurred off the record and before this case was called. From the record established during Harper's motion for a mistrial, all we know is that Morgan led the prayer and then sat down next to the circuit clerk. This limited record illustrates the necessity of entrusting the granting of a mistrial to the sound discretion of the trial court. Having observed the entire scene firsthand, the trial judge determined that Morgan would not have had any significant prejudicial effect on the venire. From what is before this Court on appeal, we cannot refute that conclusion.

¶7.     Moreover, since the prayer occurred before the trial began, Harper had ample opportunity during voir dire to explore and mitigate any resulting prejudice. But while she did question the venireman who volunteered that she knew Morgan, Harper did not voir dire the entire panel about Morgan or about the prayer. Likewise, Harper did not specifically request that the trial court admonish the venire or the jury regarding the issues of which she complains.

¶8.     The record does reflect that the jurors took the oath to be fair and impartial in their

3

deliberations and to decide the case only on the evidence presented. The jury was likewise instructed before beginning its deliberations. As the Mississippi Supreme Court has held, the jury is presumed to have adhered to its oath:

> To the extent that any juror, because of his relationship to one of the parties, his occupation, his past experience, or whatever, would normally lean in favor of one of the parties, or be biased against the other, or one's claim or the other's defense in the lawsuit, to this extent, of course, his ability to be fair and impartial is impaired. It should also be borne in mind that jurors take their oaths and responsibilities seriously, and when a prospective juror assures the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference.

*Scott v. Ball*, 595 So. 2d 848, 850 (Miss. 1992).

¶9. It would certainly have been preferable for the circuit clerk to have selected someone else to lead the prayer. But from the record we cannot say Harper suffered irreparable prejudice, so we cannot conclude that the trial court abused its discretion in denying her motion for a mistrial.

## 2. Judgment Notwithstanding the Verdict / Property Damage

¶10. Harper's second issue is presented as whether the trial court erred in denying her motion for a judgment notwithstanding the verdict. But she makes numerous independent assertions under this umbrella, including challenges to several different evidentiary rulings, and nearly all of these subarguments are presented in a cursory fashion. This is contrary to Mississippi Rule of Appellate Procedure 28(a)(3), which requires that "[e]ach issue presented for review shall be separately numbered" in the statement of issues. "No issue not distinctly identified shall be argued by counsel[.]" *Id.* Failure to abide by Rule 28(a)(3) bars our

4

review of these assertions. *Reed v. State*, 987 So. 2d 1054, 1056-57 (¶8) (Miss. Ct. App. 2008).

¶11.    Harper's main thrust under this issue is her challenge to the jury's finding that Edwards had suffered $25,000 in damages. Her argument, to the extent it is properly before this Court, seems to be that she is entitled to a JNOV because of defects in Edwards's proof of property damage, the loss of his vehicle, which he contended amounted to $1,700.[1] We note, however, that the jury returned a general verdict on all of Edwards's damages. The damages included medical expenses and lingering pain and suffering, and since, as we shall explain the next issue, those are sufficient to sustain the $25,000 finding of damages, the claim that the trial court should have granted a JNOV based on defects in the proof of property damage is a nonstarter. *Ill. Cent. R.R. Co. v. Brent*, 133 So. 3d 760, 770 (¶19) (Miss. 2013).

### 3.  Remittitur / New Trial

¶12.    In the final issue, Harper contends that the damages award is excessive because it is approximately twelve times the medical bills incurred. From this, Harper contends that the verdict was the product of passion or prejudice.

¶13.    The question is whether the award is "so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, and . . . manifestly show[s] the jury to have been actuated by passion, partiality, prejudice, or corruption." *Irby v. Travis*,

---

[1] Edwards testified that his vehicle was worth $2,000 before the accident but just $300 (as scrap) afterwards.

935 So. 2d 884, 940 (¶176) (Miss. 2006). Whether an award is excessive should be determined on a case-by-case basis. *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 998 (¶27) (Miss. 2003). The standard of review from the denial of a remittitur or a new trial is abuse of discretion. *Bailey Lumber & Supply Co. v. Robinson*, 98 So. 3d 986, 991 (¶11) (Miss. 2012). "In reviewing a jury verdict, the Court will resolve all conflicts of evidence in the appellee's favor and determines all reasonable inferences from the testimony in the light most favorable to the appellee's position." *Irby*, 935 So. 2d at 940 (¶176).

¶14. Edwards's medical bills totaled about two thousand dollars. He testified that the pain began the day after the accident, a Saturday. His back, arm, neck, and head hurt. He initially treated it with rest and over-the-counter pain medication. But the pain continued to get worse until he went to the emergency room the following Tuesday. There, Edwards was given prescription pain medication and steroids. He was then treated by a chiropractor and underwent physical therapy with Linda Troy, a nurse practitioner. Edwards testified that his treatment had given him only partial relief and that he had continuing soreness and headaches through the time of trial, about one and a half years after the accident. He had to scale back activities outside of work, such as growing watermelons, through which he had previously earned additional income.

¶15. Awards of thirty, forty, fifty, or even one hundred times the actual damages shown have been affirmed on appeal, "[d]ue to the uncertainty of the monetary value placed on pain and suffering and future damages." *See Circus Circus Miss. Inc. v. Cushing*, 108 So. 3d 980, 990 (¶¶21-22) (Miss. Ct. App. 2012) (citations omitted). Cases cited by Edwards where a

6

remittitur was granted when hundreds of thousands or millions of dollars were awarded for pain and suffering are inapposite; claims of excessiveness should be reviewed "by comparing the awards at issue with rulings in other factually similar cases decided under controlling law." *Id.* at (¶20) (citing *Cade v. Walker*, 771 So. 2d 403, 408 (¶12) (Miss. Ct. App. 2008)). Harper also presents several cases where the granting of a remittitur was affirmed on appeal, but those are likewise distinguishable because of the deference owed to trial judges. *See Stringer v. Crowson*, 797 So. 2d 368, 370-72 (¶¶5-9) (Miss. Ct. App. 2001) ("We cannot say the trial judge . . . , having had the opportunity to observe the demeanor of the witnesses and apply his learned experience from the most central vantage point of the entire trial, exceeded or abused his discretion, and accordingly [we] affirm the remittitur."). Since the trial judge did not grant a remittitur in this case, we must defer, as he did, to the jury.

¶16.    Given the evidence of Edwards's injuries and lingering pain, we cannot say that a $25,000 award "shocks the conscience" or that the trial court abused its discretion in denying Harper's motion for a remittitur or a new trial. This issue is without merit.

¶17.    **THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

        **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.**