# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00934-COA

**DANIEL ANDERSON**                                                             **APPELLANT**

**v.**

**JEROME SALAAM AND TRI-STATE**                                    **APPELLEES**
**EXPEDITING SERVICES, INC.**

DATE OF JUDGMENT:              04/13/2018
TRIAL JUDGE:                          HON. JOHN KELLY LUTHER
COURT FROM WHICH APPEALED:   CHICKASAW COUNTY CIRCUIT COURT,
                                            SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      MARK T. FOWLER
ATTORNEYS FOR APPELLEES:     LEWIS W. BELL
                                            ROBERT H. PEDERSEN
NATURE OF THE CASE:           CIVIL - PERSONAL INJURY
DISPOSITION:                        AFFIRMED - 09/24/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., WESTBROOKS AND C. WILSON, JJ.

### C. WILSON, J., FOR THE COURT:

¶1.     Daniel Anderson filed this civil action against Jerome Salaam and Salaam's employer, Tri-State Expediting Services Inc.  Anderson alleged that Salaam, while acting as an agent or employee for Tri-State, negligently caused an automobile accident on August 31, 2012, just outside of Okolona, Mississippi.  As a result of the accident, Anderson alleged damages of $16,578.36 for medical bills, $27,000 for lost wages, and unspecified damages for pain and suffering.

¶2.     On August 5, 2018, a Chickasaw County jury allocated 25% fault to Salaam and Tri-State and 75% fault to Anderson and determined that Anderson suffered $9,000 in total

damages. On April 13, 2018, the Circuit Court for the Second Judicial District of Chickasaw County entered a final judgment and ordered Salaam and Tri-State to pay Anderson $2,250 ($9,000 x 25%) based on the jury's verdict allocating 25% fault to Salaam and Tri-State. On April 18, 2018, Anderson moved for a judgment notwithstanding the verdict, for an additur, or, alternatively, for a new trial. The circuit court denied Anderson's post-trial motion on June 4, 2018, and on June 26, 2018, Anderson filed a notice of appeal from the final judgment and from the circuit court's denial of his post-trial motion. Aggrieved with the amount of the jury's damages award, Anderson raises two issues on appeal, which we will encompass in one: whether the trial court abused its discretion in denying his motion for an additur or alternatively, for a new trial.[1]

¶3.    After a thorough review of the record, we affirm the circuit court's denial of Anderson's post-trial motion.

FACTS

¶4.    The facts of this case originate from an automobile accident on August 31, 2012, involving Anderson and Salaam on Highway 32 just outside of Okolona, Mississippi. At the time of the accident, Anderson worked for Orkin. Anderson and his passenger, Orkin employee Steven Tracey, were driving Anderson's Orkin-owned pickup truck eastbound on Highway 32. Anderson had missed his next customer's location and was looking for a place to turn around. Salaam, carrying a trailer full of furniture behind an 18-wheeler under lease

---

[1] Because Anderson does not actually challenge the sufficiency of the evidence in either his post-trial motion or his appellate brief, we restrict our analysis to whether the trial court erred in denying his motion for an additur or alternatively, for a new trial on damages.

2

from Tri-State, had been following Anderson eastbound on Highway 32 since he left his last checkpoint in Houston, Mississippi. As Anderson attempted a left turn, the front-right (passenger) side of Salaam's truck collided with the left side of Anderson's truck just behind the driver's door. Anderson's truck came to rest in the private drive on the north side of Highway 32. Salaam's cab came to rest in the westbound lane of Highway 32. Salaam's trailer sprawled both the westbound and eastbound lanes of the highway.

¶5. Anderson alleged that Salaam, while acting as an agent or employee for Tri-State, negligently caused the automobile accident, resulting in bodily injuries and damages to Anderson. Salaam and Tri-State conversely alleged that Anderson's negligence proximately caused and/or contributed to the automobile accident.

**Liability Evidence**

¶6. At trial, Anderson relied on testimony from Salaam and Mississippi Highway Patrol investigating officer Wesley Kelley to contend that Salaam caused the accident when he attempted to pass Anderson in a no-passing zone. Officer Kelley's accident report indicated that Salaam violated the rules of the road by improperly attempting to pass and overtake Anderson's vehicle, based on Officer Kelley's finding that Salaam's tractor-trailer came to rest across the solid yellow center line of Highway 32. In contrast, Salaam repeatedly denied that he attempted to pass Anderson's vehicle and stated that he only moved into the no-passing zone in an attempt to avoid a collision with Anderson's vehicle. Salaam also stated that he believed Anderson was driving erratically.

¶7. Anderson also relied on testimony from accident reconstruction expert Jason Walton.

3

Anderson retained Walton to develop the liability theory that Salaam had attempted to improperly pass Anderson in a no-passing zone. Walton, however, actually contradicted Anderson's "improper passing" theory. Based on his extensive experience as an accident reconstruction expert, Walton opined (1) that Salaam was not trying to pass or overtake Anderson; (2) that Officer Kelley incorrectly indicated on his accident report that Salaam was trying to pass Anderson; and (3) that instead, the accident occurred because Salaam was following too closely to avoid hitting Anderson's vehicle. While Walton concluded that Anderson did not cause the accident, he qualified his opinion on the assumption that Anderson was not distracted while using a cellphone at the time of the accident.[2]

¶8.    Salaam and Tri-State relied on Salaam's testimony and the testimony of witness Steven Tracey to contend that Anderson negligently caused the accident when he signaled to make a right turn before abruptly turning left. Salaam testified that just before the accident, Anderson nearly slowed to a complete stop, signaled right to turn into a driveway on the eastbound side of the road, then suddenly turned left. According to Salaam, he moved into the westbound lane of Highway 32 to avoid Anderson upon Anderson's slowing and signaling a right turn. Salaam further testified that he could see Anderson holding and using a cellphone just prior to and during the accident. Tracey, who was riding with Anderson when the accident occurred, disputed Anderson's testimony that Tracey was asleep prior to

---

[2] At trial, both parties introduced evidence that the other was on his cellphone at the time of the accident. Although Salaam testified that "[he] never talk[s] on [his] phone in any vehicle," he admitted that he was on his commercial headset—which, by law, "commercial contractors . . . are allowed to use" while driving—prior to the accident. Anderson unequivocally denied that he was on his cellphone at any time, but his passenger, Steven Tracey, contradicted Anderson on this point.

and leading up to the time of the accident. Tracey testified that prior to the accident, he and Anderson were looking for directions and had concluded that they had missed their turn. Tracey also stated that Anderson was in fact on his cellphone, and that while on the cellphone, Anderson abruptly made a left turn to turn around.

¶9. After hearing the trial testimony and evidence, the jury unanimously found that both Anderson's and Salaam's negligence proximately caused the accident. The jury allocated 25% fault to Salaam and Tri-State and 75% fault to Anderson.

### Damages Evidence

¶10. Anderson testified that at the time of the accident, he hit his head against the glass, but that the impact was not hard enough to break the glass, to cause bleeding, or to knock him out. He described his mental and physical state as being "on an adrenaline rush," and he neither reported nor complained of any injuries to Officer Kelley, who testified that Anderson seemed uninjured. At the scene of the accident, Officer Kelley neither called an ambulance nor reported an injury in the accident report. Around midnight the day of the accident, however, Anderson presented to the emergency room because he "started just tightening up and tensing up to the point [he] could not move at all."

¶11. Anderson received the following treatment as a result of the August 31, 2012 accident:

| 09/01/2012 | Dr. Gallaher at the North Mississippi Medical Center diagnosed cervical strain and restricted Anderson to lifting no more than 25 pounds for four days. X-rays showed no fractures, dislocations, or destructive bone processes. |

5

| | |
|---|---|
| 09/03/2012 | Either Dr. Bolten or Dr. Shafer at the North Mississippi Medical Center ordered a CT scan of Anderson's cervical and thoracic spine, which showed no acute traumatic changes in the thoracic spine. The treating physician diagnosed back muscle spasm and cervical strain, prescribed pain medications, and ordered two days' work restrictions. |
| 09/04/2012 | Dr. Bell at Family & Urgent Care Clinic diagnosed thoracic and cervical strain and prescribed medications. |
| 09/10/2012 | Dr. Bell diagnosed cervical and thoracic strain and continued medications. |
| 09/17/2012 | Dr. Bell diagnosed thoracic strain and spasm and continued medications. |
| 09/25/2012 | Dr. Bell diagnosed thoracic strain, continued medications, and ordered a referral. |
| 10/05/2012 | Dr. Mitias saw Anderson upon referral from Dr. Bell. Dr. Mitias noted that Anderson did not take his pain medications, that x-rays showed no fractures, and that the diagnosis was cervical strain. He prescribed therapy for two weeks, administered anti-inflammatory injections, and released Anderson to work full-time with light duty. |
| 10/16/2012 | Dr. Mitias reviewed Anderson's cervical spine MRI report which showed no pathology that correlated with Anderson's symptoms. Dr. Mitias diagnosed muscle sprain or strain, prescribed medications for muscle spasm and inflammation, and ordered continued therapy for two weeks. |
| 10/30/2012 | Dr. Mitias noted that Anderson's condition had improved by 85% and ordered two weeks of physical therapy. |
| 11/13/2012 | Dr. Mitias injected occipital blocks and steroids for muscular neck pain. |
| 11/20/2012 | Dr. Mitias concluded that Anderson could return to work full-time without restrictions because diagnostic studies were normal, and because Dr. Mitias could find nothing objectively to support Anderson's pain complaints. Since Dr. Mitias could do nothing more to combat Anderson's injuries, he referred Anderson to a neurosurgeon—Dr. Brophy—for a second opinion. |
| 12/04/2012 | Dr. Brophy concluded that Anderson did not require surgery and that Anderson's condition had improved by 90%. Dr. Brophy released Anderson with no work restrictions effective December 5, 2012. |
| 09/06 - 11/12/2012 | In total, Anderson attended physical therapy 24 times over nine weeks and four days at Crossroads Rehab Services, Inc. |

¶12. After December 4, 2012, Anderson did not seek further medical treatment for any injury relating to the accident. Although he was temporarily disabled from August 31, 2012, to December 4, 2012, Anderson suffered no permanent physical impairment from the accident.

¶13. At trial, Anderson alleged $16,578.36 in medical bills resulting from injuries sustained in the accident and lost wages totaling $27,000. As proof of pain and suffering, Anderson offered his testimony, his wife's testimony, his treating physician Dr. Mitias's testimony, and his medical records, which reflected treatment for physical pain in his neck and back. At trial, Anderson acknowledged that he sustained no disc injuries, nerve injuries, or broken bones, and he confirmed that all of the treatment he received related to muscle injury. Anderson's wife corroborated Anderson's testimony with regard to his pain and suffering. Dr. Mitias, via deposition testimony, recounted Anderson's treatment history, and testified to a reasonable degree of medical probability that (1) Anderson suffered a temporary period of disability during his treatment period; (2) Anderson would not suffer any permanent physical impairment as a result of the accident; (3) the accident caused the pain; and (4) that his services in the amount of $1,853.36 were both necessary and reasonable under the circumstances. Dr. Mitias further testified that based on his medical experience, he would expect Anderson's pain eventually to fully improve. Dr. Mitias opined that the kind of pain Anderson complained of would not affect Anderson's ability to return to his pre-accident job full-time. According to Dr. Mitias, Anderson no longer needed pain medicine, muscle relaxers, or physical therapy after his last visit.

7

¶14.    Regarding lost wages, Anderson provided his tax returns for 2011, 2012, and 2013. Anderson reported $22,276 in wages in 2011 for the tax period before the accident, $17,486 in 2012, and $1,248 in 2013.  Anderson contended he was entitled to recover the difference in wages between 2011 and 2012 and between 2011 and 2013, which he alleged totaled $27,000.  On cross-examination, Anderson admitted that he was making $3,000 per month during the three-month period between the August 31, 2012 accident and December 4, 2012, the day Dr. Brophy released Anderson with no work restrictions.

¶15.    Salaam and Tri-State contested Anderson's damages evidence via cross-examination of Anderson's witnesses.  Salaam and Tri-State argue on appeal that Anderson "failed to prove by a preponderance of the evidence that all of his claimed medical expenses, all of his claimed lost wages and all of his claimed pain and suffering were proximately caused by the accident."

¶16.    The jury determined that Anderson suffered $9,000 in total damages.  The trial court ordered Salaam and Tri-State to pay Anderson $2,250 (25% of $9,000) based on the jury's verdict allocating 25% fault to Salaam and Tri-State.  Aggrieved with the amount of the jury's damages award, Anderson moved for a judgment notwithstanding the verdict, for an additur, or, alternatively, for a new trial.  The trial court denied Anderson's post-trial motion. Thereafter, Anderson filed an appeal.  He asks this Court to determine whether the trial court abused its discretion in denying his motion for an additur or, alternatively, for a new trial.

ANALYSIS

¶17.    "The motion for an additur and its mirror motion, one for a remittitur, are variants of

8

the motion for a new trial, going solely to the issue of damages." *Cade v. Walker*, 771 So.

2d 403, 407 (¶9) (Miss. Ct. App. 2000). With regard to a motion for a new trial, our supreme

court has said:

> The grant or denial of a motion for a new trial is and always has been a matter largely within the sound discretion of the trial judge. The credible evidence must be viewed in the light most favorable to the non-moving party. The credible evidence supporting the claims or defenses of the non-moving party should generally be taken as true. When the evidence is so viewed, the motion should be granted only when upon a review of the entire record the trial judge is left with a firm and definite conviction that the verdict, if allowed to stand, would work a miscarriage of justice. Our authority to reverse is limited to those cases wherein the trial judge has abused his discretion.

*Green v. Grant*, 641 So. 2d 1203, 1207-08 (Miss. 1994); *see Craig v. State*, No.

2018-KA-00452-COA, 2019 WL 2513868, at *3 (¶13) (Miss. Ct. App. June 18, 2019)

(stating that when reviewing the denial of a motion for new trial, appellate courts will disturb

the verdict only when it is against the overwhelming weight of the evidence).

¶18. To the extent Anderson contends the jury's allocation of fault was against the

overwhelming weight the evidence, warranting a new trial, we disagree. Although the jury

heard evidence that Salaam was not maintaining proper distance when following Anderson,

the jury also weighed testimony that Anderson was talking on his cell phone when the

accident occurred and that Anderson was using his right turn signal before suddenly turning

left. The evidence presented at trial thus supports the jury's apportionment of fault such that

the verdict was not against the overwhelming weight of the evidence. Therefore, the trial

court did not abuse its discretion in denying Anderson's motion for a new trial on this issue.

¶19. In reviewing a trial court's grant or denial of an additur, this Court's standard of

review is likewise limited to an abuse of discretion. *Maddox v. Muirhead*, 738 So. 2d 742, 743 (¶5) (Miss. 1999); *Rodgers v. Pascagoula Pub. Sch. Dist.*, 611 So. 2d 942, 945 (Miss. 1992). Further, when this Court reviews the action of the jury after the trial court has refused to grant a new trial on the question of damages, "the question then becomes whether the verdict was either so excessive or inadequate as to shock the conscience and to indicate bias, passion and prejudice on the part of the jury, or, whether the jury failed to respond to reason." *Cade*, 771 So. 2d at 407.

¶20.    A trial court's authority to impose an additur is found in Mississippi Code Annotated section 11-1-55 (Rev. 2004), which reads as follows:

> The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for a new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.

Thus, pursuant to this statute, an additur may be awarded: (1) if the jury was influenced by bias, prejudice, or passion; or (2) if the damages awarded were contrary to the overwhelming weight of credible evidence. *Rodgers*, 611 So. 2d at 944.

¶21.    The Mississippi Supreme Court discussed these two standards in *Green*:

> Though stated in different terms, these two standards have long been regarded as saying essentially the same thing. The overwhelming weight of credible evidence standard is an objective one. Trial courts apply this standard by reference to the law on recoverable damages when applied to the evidence

10

before them. We review such matters on appeal for abuse of discretion. The bias, prejudice or passion standard is purely circumstantial one. Obviously we will have no way of knowing what was in the jury's mind. What we do though is have our trial courts look at the amount of the verdict and, by comparison of the evidence, in certain cases hold that the amount is so low that it could only have been returned by a jury influenced impermissibly by bias, prejudice or passion.

*Green*, 641 So. 2d at 1208 (quoting *Odom v. Roberts*, 606 So. 2d 114, 119-20 n.5 (Miss. 1992) (overruled on other grounds)). "Evidence of corruption, passion, prejudice, or bias on the part of the jury is an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of the damages." *Cade*, 771 So. 2d at 407-08 (¶11). We are therefore tasked with contrasting the jury's verdict here with Anderson's proof regarding damages to determine whether the trial court abused its discretion.

¶22. The trial court instructed the jury—as the "sole judges of the credibility of the witnesses and the weight and worth of their testimony"—to consider the following elements in determining the amount of Anderson's damages:

1. Past, present, and future physical pain and suffering and resulting emotional and mental anguish, if any;

2. All reasonable and necessary medical expenses which have been incurred;

3. Physical impairment and disability and resulting effect on Anderson's life and lifestyle; and

4. Loss of wages and any loss wage earning capacity.

The record reveals that Anderson alleged $16,578.36 in medical bills from injuries sustained in the accident and lost wages totaling $27,000. As proof of pain and suffering, Anderson presented proof at trial that included his testimony, his wife's testimony, his treating

11

physician Dr. Mitias's testimony, and his medical records, which reflected treatment for physical pain in his neck and back. Salaam and Tri-State contested Anderson's damages evidence via cross-examination of Anderson's witnesses.

¶23. The jury awarded $9,000 in total damages without regard to fault, as instructed. The jury then allocated 25% fault to Salaam and Tri-State and 75% fault to Anderson, and after a reduction for Anderson's portion of fault, the trial court entered judgment against Salaam and Tri-State for $2,250 ($9,000 x 25%).

¶24. Anderson relies on a general line of decisions granting additurs where the jury award was either less than the medical bills or equal to or greater than the medical bills, but which left nothing for pain or suffering or for lost wages.[3] According to Salaam and Tri-State,

> [t]he jury could have reasonably concluded, based on a reading of the evidence in the light that is most favorable to Defendant Salaam, that Plaintiff Anderson did not prove that all of his medical bills were for treatment that was necessary and causally connected to the accident. Likewise, based on a similar reading of the evidence, the jury could have reasonably concluded that Plaintiff Anderson had not proved by a preponderance of the evidence that he had sustained a loss of wages in the amount that he claims.

While we acknowledge that "[e]vidence of corruption, passion, prejudice, or bias on the part of the jury is an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of the damages," we also acknowledge that "[e]ach case involving the issue of an additur must necessarily be decided on its own facts." *Cade*, 771 So. 2d at 407-08 (¶11); *Green*, 641 So. 2d at 1208.

¶25. In *Green v. Grant*, Green put on disputed testimony that as a result of a car accident,

---

[3] *See, e.g.*, *Maddox*, 738 So. 2d at 745 (¶¶10-11); *Harvey v. Wall*, 649 So. 2d 184, 189 (Miss. 1995).

12

which Grant admitted was her fault, she incurred $2,199.25 in medical expenses and missed 76 hours of work resulting in lost income of $1,330.58. Green also offered proof concerning past, present, and future pain and suffering stemming from the accident. Significant contradictory evidence was presented that Green was not seriously injured as a result of the accident. The jury awarded Green $2,000 in damages. The trial court denied her motion for an additur or alternatively, for a new trial. On appeal, our supreme court likewise refused to grant an additur, reasoning that

> the extent of Green's injuries, and the amount, reasonableness and necessity of her damages are disputed by the parties. "When testimony is contradicted, this Court will defer to the jury, which determines the weight and worth of testimony and the credibility of the witness at trial." *Odom*, 606 So. 2d at 118 (citing *Stubblefield v. Walker*, 566 So. 2d 709, 712 (Miss. 1990) and *Motorola*, 555 So. 2d at 723).

*Green*, 641 So. 2d at 1209.

¶26.    "Additurs represent a judicial incursion in to the traditional habitat of the jury, and therefore should never be employed without great caution." *Rodgers*, 611 So. 2d at 945. Awards fixed by jury determination are not merely advisory and will not under the general rule be set aside "unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." *Id*. "This is because the amount of damages awarded is primarily a question for the jury." *Id*.

¶27.    Here, the "amount, reasonableness and necessity" of Anderson's damages were contested by the parties. *See Green*, 641 So. 2d at 1209. The jury determined the weight and worth of the testimony, the credibility of the witnesses at trial, and the reasonableness and necessity of Anderson's damages and concluded that Anderson suffered $9,000 in total

13

damages. We "will not substitute our factual findings for that of the jury in a contest of credibility," and as such, we find that the verdict was not so inadequate "as to shock the conscience and to indicate bias, passion and prejudice on the part of the jury." *Roberson v. State*, 19 So. 3d 95, 105 (¶25) (Miss. Ct. App. 2009); *Cade*, 771 So. 2d at 407 (¶11). Accordingly, the trial court did not abuse its discretion, and its decision to deny Anderson's post-trial motion for additur or, in the alternative, for a new trial should be upheld.

¶28. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE AND McCARTY, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**